IDEAL STOPPER CO. et al. v. CROWN CORK & SEAL CO.

(Circuit Court of Appeals, Fourth Circuit. July 12, 1904.)

No. 517.

**1. PATENTS—ANTICIPATION BY PAPER PATENT—IDENTITY OF IDEAS.**

In determining the question of identity of the inventive idea involved in two patents, it is not a sufficient answer to say of an alleged anticipation that it was a mere paper patent, and that the device had never been operative or commercially successful. because prior existing conditions may not have stimulated full development.

**2. SAME.**

A patentee cannot be denied invention because of a prior patent for a device which never came into use, unless the idea upon which his patent is predicated is so clearly set forth or suggested in the alleged anticipating patent that a mechanic with such patent before him could by the exercise of mere mechanical skill so modify proportions or change the mode of operation as to overcome the difficulties which excluded the prior device from commercial utility.

**3. SAME—BOTTLE STOPPERS.**

The Painter reissue patent, No. 11,685 (original No. 540,072). for a bottle stopper, which consists of a cup-shaped disk of material having a permanent flexion, which is inserted in the neck of the bottle and there expanded into a groove having a shoulder below, and in which a gasket has been placed, thus making a tight stopper, was not anticipated by the British patent to Young, No. 12,247 of 1848, which does not cover a stopper, but merely a disk designed to be expanded on the top of a cork or other stopper, to hold the same in place, performing the function of the wiring otherwise used for that purpose.

Appeal from the Circuit Court of the United States for the District of Maryland.

For opinion below, see 123 Fed. 666.

Philip Mauro (Reeve Lewis and Joseph C. France, on the brief), for appellants.

John C. Rose and Robert H. Parkinson, for appellee.

Before GOFF, Circuit Judge, and BRAWLEY and PURNELL, District Judges.

BRAWLEY, District Judge.    The patent in controversy is that which was considered by this court in Crown Cork & Seal Company v. Aluminum Stopper Company, 108 Fed. 847, 48 C. C. A. 72.    Of that decision the learned counsel for appellants say:

"We assent absolutely to every legal doctrine stated and applied in that decision, and find in it the full sanction and authority for every proposition upon which we rely.  The sound principles and logical reasoning of that decision, applied to the state of facts as they are presented, led necessarily to the upholding of the patent.  Applied to the actual state of facts, embracing the Young patent as part of the prior art, they lead of necessity to the opposite conclusion."

It thus appears that the single question presented by this appeal is whether the Young British patent discloses and anticipates the alleged invention of the Painter patent.    It was decided adversely to the de-

¶ 1. See Patents, vol. 38, Cent. Dig. § 73.

fendants in the court below.    We-held in the former case that Painter's patent was—

"A distinctly original conception, so essentially unlike anything in the prior art that nothing earlier has been presented to us out of which the defendants could read the invention of the patent or either claim of it.   There was no known device which could be converted into the Painter invention by any improvement short of rejection of the entire plan.   The answer of defendants, it is true, stated that this patent was void for want of novelty, and referred to the prior invention of Young in Great Britain in 1848.   This was urged by Hall's attorneys upon the attention of the officials of the Patent Office in opposition to the granting of the reissue, and was held by the board of examiners in chief not to exhibit the Painter invention; and the defendants' own expert, Lorenz, testified that the Young patent was not a practical or operative device, and seems so far to have satisfied the learned counsel for defendants on that point that Young's patent was not introduced in evidence."

Young's patent is now before us, and the appellants' case rests upon the proposition that there is "substantial identity of the inventive idea of the Young patent with that of the Painter patent," and the argument of the appellant is that every element or feature of the Painter device is found in the Young patent.   If that is true, Painter is not entitled to be considered as a pioneer, as having disclosed a primary invention, and the decision of the court below should be reversed; for the evidence shows that the appellee company, the assignee of Painter, has a practical monopoly of certain bottle-stopping devices, and it would be unjust in principle and highly injurious in its consequences to the public to sustain its exclusive privilege, unless it is clearly established that Painter was the pioneer in this art, for this would tend rather to obstruct than to stimulate invention, which is the great object of the patent laws.   If the original conception of that method of stopping bottles, for which his patents were granted, was not his; if the principle of the alleged invention, with all its undeveloped possibilities, is found in previous patents or rested in public knowledge, and he has done no more than extend the original thought by a change only in form, proportion, and degree; if he has carried forward another's conception by a new and more extended application of it; and if the essence of his patents is in doing substantially the same thing in substantially the same way, only providing such improvements or modifications as a mechanic conversant with the art could effect by skill or ingenuity—it would follow that he would be entitled only to patents upon his improvements, and would not be entitled to shut out others from the enjoyment of those improvements which the same or greater skill may have achieved. In other words, if the inventive idea was Young's, and not Painter's, and Painter had simply improved upon Young's conception, and if any skilled mechanic could take Young's patent and by a combination of the same elements, differing merely in degree or in detail, or in the substitution of equivalents, could produce a bottle stopper substantially the same as Painter's, merely varying the form of mechanism, but without involving any of Painter's ideas, then it would follow that Young was the pioneer in this art, and not Painter.   But if the entire scheme of Painter is radically different from that of Young, and if, in construction, operation, purpose, and result, the invention set forth in Painter's patent is not responsive in terms or substance to the Young construction, and the same or nonequivalent elements are not used in substan-

tially the same way to produce the same result, and no mechanical skill working upon Young's plan could ever produce the same result that Painter accomplished, then it would follow that the inventive idea was different, and any modification or improvements worked out upon Painter's idea must be tributary to it. The question to be decided is mainly one of fact, and, whatever doubt there may be as to the correctness of our conclusion, there is no doubt as to the legal principle which should govern it.

Robinson, in his work on Patents (sections 272, 892, 893, 894, and cases cited), states the principle:

The test of the question of identity in the inventive idea is whether "the compared inventions perform the same functions by the same modes of operation. If the effects produced are substantially different, there is no identity. If the effects are the same, and the functions are essentially distinct, there is no identity. If the functions are the same, and the modes of operation by which they are performed are radically unlike, there is no identity. Contrariwise, where the effects are identical, the functions identical, and the modes of operation identical, the ideas embodied in the two inventions must also be identical."

In determining the question of identity of the inventive idea, it is not a sufficient answer to say of any alleged anticipation that it was a mere paper patent, and that the same had not been operative or commercially successful; for prior existing conditions might not have stimulated full development. To discover the inventive idea that was in Young's mind, we naturally look to his statement of invention and to the drawings intended to illustrate it, for that is supposed to embody his ideas. We do not mean that Young's invention is necessarily limited to his own conception of its possibilities. Columbus would not be the less entitled to be considered to have discovered America because, when he set out on his voyage his object was, not to discover a new continent, but a new route to an old one; and if Young gave to the world an invention which was intended for one purpose only, yet which so clearly suggested the thought which afterwards bore fruitage in Painter's invention and which required only a more deft mechanic to develop it, then Young might justly be considered the pioneer in the art of inventing bottle stoppers, and Painter would be entitled only to such improvements as his mechanical skill wrought upon Young's invention. The line which separates invention from mechanical skill is at best a narrow one, and the difficulty of demarkation in this case is enhanced by the fact that of necessity we look upon Young's invention with eyes instructed by Painter's and other subsequent patents, and must take care that we do not in such light so reconstruct Young's patent as to see in it those possibilities which may seem very obvious now, but which may not have been disclosed by the patent itself; for, vague and uncertain as may be the line of demarkation between mechanical skill and invention, we could not deny Painter the right of invention, unless the idea upon which his patent is predicated is so clearly set forth or suggested by Young that a mechanic, with Young's patent before him, could by mere mechanical skill so modify proportions or change the mode of operation as to overcome the difficulties which excluded the prior device from commercial utility, and thus make fruitful the inventive idea which before was futile, merely through lack of the mechanical skill needed for its development.

Young's British patent, No. 12,247, August 21, 1848, contains the following statement of invention:

It "consists of employing discs of sheet metal raised into a conical form, so as to reduce the diameter in order to their entering the mouth or neck of such vessels, and then by causing them to be pressed so as to assume a flat form, they will retain the cork or other elastic stopper securely in the necks or mouths of such vessels. Figure 7 shows part of a section of a spirit can; figure 8, the plan thereof; figure 9 shows the section of a bottle or such like vessel; and figure 10 shows a disc of metal before and after it has been raised into a conical form. In these arrangements the cork or other elastic stopper enters the neck or mouth of the vessel, and rests on the shoulder, b, b, and is retained and pressed securely by means of the disc, which is introduced in the conical form, that then is to be caused to spread out and become flat by pressure, so that the edges will enter the groove around the neck or mouth, as shown by the drawing. By this arrangement the cork or stopper cannot be drawn out without the power equal to that required for bending the disc of metal."

Figure 9, showing the bottle neck, and figure 10, showing the metal discs, will be copied here from page 653.

A plain man, uninstructed by the learning of experts, reading the terms of the specifications and the drawing corresponding to those terms, would see in them a disc of sheet metal intended to hold the cork in its place as a substitute for the wire caging theretofore used for that purpose. There is no suggestion for providing any substitute for the ordinary cork stopper, nothing to indicate that the cork or stopper was to act in any manner different from the ordinary way, or that the disc of sheet metal was designed for any other purpose than to retain the cork in its place. No new method of stoppering bottles was claimed or suggested. The bottle was to be stopped by a cork or other elastic stopper, entering its neck in the old way and operating in the old way; the only thing that is new being the disc of metal that is to hold it in its place. It proceeds upon the theory that a cork or other elastic stopper is necessary, and provides only against its expulsion by a device in substitution for the old cork retainer of wire or other method applied on the outside of the bottle neck. In short, his invention consists, not of a new stopper, but of a new method of retaining the old stopper in its

place. That this disc, so operating, is all that there is in Young's patent, all that is claimed, and all that an inspection of the drawing shows it to be, is confirmed by its history. It has been before the world for more than half a century, and obviously the world did not want it; for it has not used it, although it has been free to do so for many years.

We have stated what we think would be the conclusions of the ordinary intelligence as to Young's inventive idea, drawn from the reading of the specifications and from the inspection of the drawing; but there are certain mysteries in the patent law that the ordinary mind cannot penetrate, and we must seek illumination from the experts. Unhappily we cannot accept without reservation the opinions of the experts who have been examined as witnesses, for they are necessarily partisans of the side calling them, and essentially advocates, and their opinions are contradictory, and tend to perplex, instead of elucidating, although they appear to be gentlemen of great ability and deserved eminence. But we have in the record before us the opinion of some experts whose testimony cannot be impeached because of interest. We refer to the trained officials of the Patent Office, who had the same question before them, and substantially the same arguments, when Hall filed his petition of interference on Painter's application for reissue, on the ground that Painter had been anticipated by Young. One of the primary examiners, Mr. Witherspoon, who has been examined as an expert by the defendants in this case, sustained this contention; but he was overruled by the unanimous judgment of the Board of Appeals. The case was exhaustively presented and carefully considered. We referred to these proceedings in our former opinion, and it is not necessary to repeat what was then said. The final decision of the board of examiners was that the "British patent cited has not this type of stopper, and does not include its elements operating in the same way to produce the same result."

In the former case one of the defenses set up in the answer was that Painter's patents "are void for want of novelty, because the contrivance described and shown therein was, prior to William Painter's alleged invention thereof, patented to Mr. Young in the United Kingdom of Great Britain and Ireland, August 21, 1848, in letters patent No. 12,-247." When that case came on to be heard this prior patent was not introduced in evidence; but it was before the court as part of the proceedings of the Patent Office, growing out of Hall's interference, and did not escape our attention. There is an implication, rather than a suggestion, that there was something suspicious, if not sinister, in the failure of the defendants in that case to introduce this patent in evidence. It would surely have been as good a defense there as it is claimed to be here, and the omission to present it naturally calls for explanation. That it was due to lack of acumen and zeal on the part of defendants' counsel can hardly be successfully claimed. This court bears willing witness to the ability and earnestness with which the defense in that case was conducted. Mr. Walker, the leading counsel for the defendants, and the author of the well-known text-book on Patent Law, seemed to us to have explored the whole domain of the patent law to find weapons of assault upon the Painter patent, and all the learning on that subject was exhausted. That Painter's claim with-

stood these assaults seemed to us to be due to the fact that it stood upon an impregnable foundation. Inasmuch as certain testimony was offered by the defendants in this case in explanation of the reasons for the abandonment of this defense, Mr. Walker was called by the complainants as a witness in rebuttal, and testified as follows:

"No ulterior reason, or any reason aside from my judgment of want of merit in the Young defense, had any influence in causing that defense to be omitted from the evidence in the Aluminum Case."

Copies of his correspondence while engaged in preparing for the defense, giving in detail the reasons for this conclusion, are in the record, from which it appears that after repeated experiments by the expert, Mr. Lorenz, and after thorough analysis by Mr. Walker himself of the mechanical points which he found to be involved in the question, and a thorough study of the Young patent, he reached the conclusion that Young's combination was practically useless because it did "not provide any way to guide its conical disc into its groove fully and firmly enough to enable it to exert any material resistance to any tendency that the cork may have to be forced out of the bottle by pressure within the bottle." In his letter of February 2, 1899, he says:

"We find, on experiment, Young's cork will not expand his disc into its groove when it is cut on a line with the diameter of that groove, because, being yielding, the cork will suffer itself to be indented by the edge of the disc rather than force that disc outward into its groove. It is apparent to me that Young never made a stopper on that plan, or he would have discovered that it was necessary to not only give the shoulder under the cork a diameter smaller than that of the unexpanded disc, but also to give the shoulder immediately under the disc groove a diameter less than the unexpanded disc."

And, after giving further details, he adds:

"For these reasons I am convinced that we must give up all hope of making a successful defense on Young, and it is never wise to make any invalid defense in a patent case, because such a defense reflects injuriously upon whatever valid defenses may be introduced in the same case."

The conclusions reached, with manifest reluctance, after careful experiments and thorough analysis by experienced counsel, vitally interested and evidently anxious to discover in Young's patent an anticipation of the Painter patent, and which, if found, would have been a successful defense against it, and the conviction that there was no merit in such defense, and the entire abandonment of the same after it had been set up in the answer, seems to us to be entitled to great weight as the opinions of experts against their interest. Opinions of experts generally, though given under oath, are but arguments in behalf of the side calling them. They are paid for generally as counsel is paid. These considerations cannot affect the weight of the opinions of Mr. Lorenz and Mr. Walker, given in circumstances which furnished every possible motive for reaching conclusions the converse of those actually reached, and their weight depends solely upon our estimate of their ability and skill. In somewhat of the same atmosphere must be weighed the opinion of the learned and conscientious judge below. His judgment in the former case had been adverse to the complainants, not, it is true, upon the precise point now at issue, but his opinion evidently was that the Painter patent was not entitled to the broad construction claimed for it. So when this case came before him, in so far as bias may be predicated

of a mind so singularly open and just, it might be thought that his inclination would be rather to limit than to expand the claims of Painter's patent, and his conclusion that Young's patent is not an anticipation of the invention of the patent in suit states tersely the point and essence of this controversy:

"But Young's is, after all, a different kind of stopper. His is a cork or plug, which is the stopper, and which is kept from coming out by a metal disc or cup. The complainants' is a metal disc, which is the stopper, made tight by its contact with the bottle by an elastic packing of cork or other material."

On the side of the complainants, then, we have Young's statement of invention and the drawing illustrating it, which is fundamentally different from Painter's, in that it is a cork retainer, and not a new device for stoppering bottles, as Painter's is. We have the proceedings of the Patent Office, with its repeated adjudications, after discussion and consideration of substantially the same argument as now presented, adverse to the contentions now urged, and where the claims of the Painter patent were framed and approved as adequately expressing the distinction between Painter's invention and Young's and all prior inventions. We have the opinion and judgment of an uncommonly able and experienced lawyer, founded upon experiments of his expert and his own analysis, in circumstances tending to give it the highest value, that there was no merit in Young's patent as a defense against Painter. We have the judgment of the court below to the same effect, and we have the undisputed fact that, although Young's patent was before the world for half a century, it had no effect upon the bottle-stopping industry. There is no evidence that it was ever used for any practical purpose, or that any inventor or manufacturer ever found in it suggestion of or inspiration for any new form of bottle stoppers; and we have the judgment of this court, the correctness of which is not questioned or impeached, that:

"Prior to the inventions hereinafter to be described, which are the subject-matter of this controversy, the common method of stopping bottles was with cork, wood, rubber, or some other resilient material, inserted longitudinally into the neck of the bottle, and held there by its elastic, lateral pressure in frictional contact with the circumference, supplemented, in cases where gaseous liquids cause internal pressure, by wire or twine on the outside of the bottle head." 108 Fed. 847, 48 C. C. A. 72.

Such was our judgment as to the state of the art prior to Painter's invention, the testimony showing abundantly and conclusively that there was no practical method of sealing bottles which dispensed with the costly and inconvenient plug or cork; and there is nothing in the testimony in this case, or in the argument, which attempts to modify the correctness of that conclusion. There have been great improvements in the art since Painter first received his patent, such as Hall's, who was a sort of pupil of Painter, and whose patent was held to be infringement, and the patents now in controversy, admitted to be infringements, if Painter's patent is construed as we have heretofore construed it. The fact that from the time of Young, in 1848, up to the time of Painter, there were no improvements in the art, and that since Painter's invention there have been many improvements, creates a strong presumption that Young's inventive idea was a barren one, and that

Painter's inventive idea was a different and a fruitful one, and the converse of a suggestion of identity of ideas, upon which the defense rests.

Before considering further this defense it is well to state precisely what Painter's invention was. The pertinent claims are as follows:

"(1) The combination of a receptacle having a groove in the side of its mouth and a shoulder projecting inward beyond the wall of the mouth above the groove, and a cup-shaped disc or plate of material having permanent flexion, all operating as set forth."

"(4) The combination of a receptacle having a groove in the inside of its mouth and a shoulder projecting inward beyond the wall of the mouth of the groove, a cup-shaped disc or plate of material having permanent flexion, and a packing or stopper beneath and retained by the disc or plate, all operating as set forth.

"(5) A combination, substantially as hereinbefore described, of a bottle having an interior groove in its mouth, a packing or gasket in said groove, and a disc or plate of material having permanent flexion, which confines the packing in said groove, and maintains it in tight contact with the adjacent surface of the groove."

Figure 1 is a central section of the bottle neck, having a groove and a packing in such groove, and showing stopper in position to be expanded. Figure 2 is a similar section, showing the same expanded, and with the packing in the groove compressed and clamped against the adjacent surface of the groove. Figure 6 shows a cup-shaped disc. Reading his statement of invention and the figures illustrating it, what would the ordinary mind conceive to be the inventive idea of Painter? Clearly, his idea is to dispense with the old-fashioned method of stopping bottles with cork, and to produce by machinery a substitute for it. It is not intended to be an improvement on the old system, but a radical departure from it. Starting out with the knowledge that cork, being a natural product, was liable to great departures from uniformity in size and quality, relatively expensive in first cost, and requiring treatment to bring it to a satisfactory degree of elasticity, with certain disadvantages of a hygienic nature, by reason of its porous quality, which causes it to absorb deleterious substances, which might be injurious to the contents of the bottle, and which would also be injuriously affected by defective corks, requiring labor to put them in and additional labor to pull them out, he conceived a broadly novel system for stopper-

ing bottles, by dispensing with cork or reducing its use to a minimum, which would be free from the erratic effects of the natural material, inexpensive to produce, facile to operate, and efficient in results. Young's whole conception being that a cork is necessary, there is no suggestion of a substitute for it. The inventive idea involved in his disc of metal is to provide a substitute for the wire caging to hold the cork in its place. It proceeds upon the theory that a cork is necessary, and therein lies the fundamental difference in the underlying principle between Young and Painter. The elements employed, in their relation to each other, in their methods of operating, and in results obtained, are essentially dissimilar; the difference being a difference in the plan, not merely a difference of proportion and degree in carrying out the same plan. Painter's plan involves an interior annular groove in the bottle neck, which forms the chamber for the stopper, with the shoulder which forms the floor, another shoulder which forms the roof, and a peripheral wall. The stopper is a cup-shaped disc, formed of material having permanent flexion, small enough to enter the mouth of the bottle into the zone of the groove. When it so enters, being composed of material which retains its form when flattened, it is expanded by molecular deformation of the cup, whose periphery is pressed into hard and tight contact with the peripheral wall of the groove. If this wall was absolutely accurate in form, nothing more would be needed; but, as such refined nicety is expensive and difficult of attainment in ordinary bottles, Painter's scheme provides for supplementing the deflected cup with a packing of rubber, cork, or other suitable material, in the form of a gasket around the edges, and by the radial compression of this packing between the periphery of the cup and the peripheral wall of the groove; the disc serving not only its own office as a stopper, but also maintaining the packing in the groove in close contact with the adjacent surface of the bottle neck, thus making a stopper sufficiently tight to retain gaseous liquids. There is an inwardly projecting annular shoulder in the bottle neck, which prevents the cup slipping down too low in the neck of the bottle. A like shoulder above prevents it being pressed upwards by the expansion of the gaseous elements, and the cup thus easily positioned in the zone of the groove, when the deflecting agent is brought to bear on it, its periphery is expanded exactly where it is wanted. In such position it would be difficult to get it wrong. The packing required to make a tight joint need be very thin. If of cork, its bulk is trifling as compared with the amount of cork needed for an ordinary stopper; thus conserving economy and avoiding the other objections which experience has pointed out in the use of cork for stoppers.

Claim 1 of Painter's patent does not refer to packing. Claim 4 recites the packing, and claim 5 recites a bottle having an interior groove in its mouth, with a packing or gasket and a disc or plate having permanent flexion. The battle raged for years in the Patent Office over these claims, and after thorough examination of all prior patents, including Young's, and exhaustive consideration of the whole subject, as shown by the record—some of Painter's claims being disallowed—the claims of the patent were framed and allowed by the board of appeals as adequately expressing such distinctions as that board finally determined would be effective for the purpose of securing the invention

which the patent was intended to protect. If that board believed, as is claimed by appellants, that there is "substantial identity of the idea of the Young patent with that of the Painter patent," how is it possible that, after an exhaustive examination and review of the Young and other alleged anticipations, it could find, as it did find, that "there is novelty, and clear patentable novelty, in the combination which includes the vessel with its groove and shoulder and the raised expansible disc or plate?"

Having thus considered what we think are the essential features of Painter's patent, we will now, at the risk of some repetition, consider the essential features of Young's patent. Primarily, it suggests no substitute for the ordinary cork stopper. It proceeds on the theory that such a stopper is necessary, and provides nothing to take its place. There is no flanged or cup-shaped disc, or anything working on that principle as a substitute for the cork. All that it claims is "a disc of sheet metal raised into a conical form," which by pressure assumes a flat form, which "will retain the cork or other elastic stoppers securely in the necks or mouths of such vessel." The figures illustrating his conception show a round flat piece of metal, with a hole in the center and a line cut through to the circumference, which permits it to be coiled like a ribbon in the shape of a cornucopia. There is no inward projecting shoulder to the groove to arrest the coil of metal in the plane of the groove, for it is intended to rest on the cork. The law of its structure requires a pressure against the small end of the coil, which will cause it to unwind and thus slide flatwise into the groove. The principle on which it operates involves a radial division from center to circumference. It does not form and cannot form a continuous peripheral engagement with the wall of the groove as, either by itself or supplemented by a peripheral packing or gasket, will constitute a stopper, for it is not intended for any such purpose; its only purpose being to bar the escape of the stopper.

There is a great deal of testimony tending to show that it is not effective for that purpose; that, if operated under commercial conditions, it is not available for any practical purpose; and the record shows that experiments conducted in the former case for the purpose of preparing a defense satisfied the parties interested that it was inoperative and worthless. The experts, on the one hand, have pointed out the difficulties which in their opinion constitute a fatal disability inherent in the plan. On the other hand, experts have testified to their successful experiments. No bottlers engaged in the business and having practical experience in the art have shown that bottles can be stopped by this method with that uniformity, facility, and economy which gives it superiority over the old method of retaining corks by wire. All that these experiments prove is that by careful manipulation the disc can be inserted. There is no testimony whatever that the device has gone into practical use, and, as everybody has been free to use it for many years, this fact creates the strongest presumption of its inutility. Commercial success is not an infallible standard by which to test the merit of an invention. Such success is often due to mere business ability in manufacturing, exploiting, and advertising; but, given a large demand for a particular thing, a market already created, and an invention which it is free to use, the fact that it is not used strongly demonstrates

its inadequacy. The public, crying for bread, is not satisfied with a stone. It needed a new stopper, cheap in production, facile in operation, efficient in results. Young gave it only its old stopper with a new device for holding it in place, so difficult in operation as not to exclude the older method, which accomplished a like purpose, and the result was that nobody wanted it; and, so far as the testimony shows, nobody has ever used it, except the experts employed and paid to do so. From the time of Noah all mankind, including Young, stopped his bottles with cork or some other resilient material, until Painter's patents taught him something better and cheaper, so much better and so much cheaper that 60,000,000 of his stoppers were taken last year; and yet the learned counsel for the appellants, admitting in the court below, and not denying here, that he is operating under patents that are infringements, if Painter's is valid, asks with apparent earnestness, and with iteration, wherein consists Painter's inventive idea? If the records of the Patent Office, wherein it is set forth in detail, and where, after sharp contests and exhaustive examination, the claims were allowed and framed; if the instant public recognition in the large demand for the article produced—is not proof that he has invented something new and useful, it would be difficult, perhaps, to give an answer that would satisfy.

This is not one of those great inventions that awaken admiration for the genius of the inventor and stir the heart like a trumpet. It is nothing but a bit of metal and a bit of cork, so co-operating that the result is something very simple, very cheap, very efficient, and so very much needed that the wonder is that nobody did it before, but nobody did. It is not surprising that Young did not, for he was not working towards this result. He only sought to devise a new method of holding down the stopper, not to produce a new stopper. He had a different conception, worked on a different plan, and produced a different effect. He, too, it is true, used a bit of metal so coiled as to enter the mouth of the bottle, which in its devolution might be flattened out. There is no shoulder under the disc groove, with diameter less than the unexpanded disc, which would prevent its slipping into the bottle; for this shoulder, according to Young's conception, was not necessary, as the disc was not designed to enter until the cork was in, and was to rest on that. His coil might, by unwinding, serve the purpose of holding the cork in its place; but it could not possibly, by the very law of its construction, maintain that close circumferential contact with the wall of the bottle neck essential to make an effective stopper, either with or without the packing or gasket. It has not and cannot have the permanent flexion which Painter's disc has. It is a cone of thin metal, something like a metal ribbon, which is designed to perform its function by unwinding, liable to overlap, and entirely incapable of forcible expansion against the wall of the bottle like a continuous flange. The primary idea that an efficient seal could be effected by it alone, or by the lateral pressure of its edges against a packing of elastic material, which would thus insure the filling of any irregularities between the metal and the adjacent wall, is entirely lacking in Young's invention. Nobody has suggested, and nobody would pretend, that Young's disc alone could be used for sealing a bottle, while Painter's alone would seal the bottle, provided the bottle neck was perfectly round and regular; the gasket or packing being made necessary only by reason of the ir-

regularities and imperfections incident to cheap bottles. It does not follow that the inventive idea is the same because each employed a metallic element and an elastic element to accomplish the same purpose; for, if terms are employed which avoid defining the distinctive character of the device or imperfectly describe it, few patents would escape anticipation, for nearly all employ the same elements. The imagination may find in Young's "disc of sheet metal" the cup-shaped disc of Painter; for men are prone to see what they want to see. Polonius saw in the cloud first a camel, then a weasel, and then something "very like a whale," as Hamlet bade him. Taught by Painter, we can see that a "disc of sheet metal" may be converted to a purpose altogether different to that which Young conceived, not by a mere mechanical change, but by a functional change, due to a conception of a different plan. Young, it is true, does not in his statement of invention require that his disc of sheet metal should be slit; but his drawing shows it, and it cannot operate on his plan unless it is slit radially to form the coil or cone to enter the bottle neck, so as to unfold. So, with the cork. It is not a mere matter of dimensions, for that is simply a question of proportion, merely one of mechanical judgment; but the difference between the cork as used by Young and the thin layer or packing used by Painter is a difference of function. With Young the cork is the stopper; with Painter the packing is merely ancillary to the stopper. The difference in the interior groove and shoulders in the bottle neck is also one of function. This has already been pointed out, but a mere inspection of the drawings shows it more plainly than any words of description.

That there is a superficial resemblance between the two patents must be conceded, in that both use a combination of metal and elastic material; but it does not follow that there is an identity in the inventive idea, for, as we have endeavored to point out, each was guided and informed by a different purpose. The elements are combined upon a fundamentally different plan, and one cannot be merged into the other by mere changes in proportion or degree or by the substitution of equivalents. The mechanical skill which may be invoked to exclude the idea of invention must be mechanical skill applied in accordance with the direction of the alleged anticipating patent; not the skill which, taught by the invention in suit, seeks to reform and reorganize the former patent, so disguising it under a cloud of subtlety of argument and suggestion as to transform it.

The judgment of the court below is affirmed.