## AMERICAN METAL CAP CO. v. ANCHOR CAP & CLOSURE CORPORATION.

(District Court, E. D. New York.   October 6, 1921.)

1. **Patents ☞328—1,079,238, for bottle cap, held valid and infringed.**
    The Hammer patent, No. 1,079,238, for a sheet metal bottle cap, *held* not anticipated, valid, and infringed.
2. **Estoppel ☞68(2)—Patentee bound by his own construction of patent.**
    Where a patentee has secured a decree from one court sustaining his patent on a particular theory advanced by him, he cannot, in another suit in which the evidence discloses anticipation, on that theory, abandon it and successfully contend for an inconsistent theory.
3. **Patents ☞54—Abandoned experiment not part of prior art.**
    A prior invention, abandoned, is merely an experiment, and does not affect the rights of an inventor, who takes up the subject and perfects the invention for actual use.

In Equity.   Suit by the American Metal Cap Company against the Anchor Cap & Closure Corporation.   Decree for complainant.

C. A. Weed, of New York City, for plaintiff.
George Ramsey, of New York City, for defendant.

GARVIN, District Judge.   [1] This is an action in equity brought by plaintiff, assignee of Hammer patent, No. 1,079,238, to restrain the infringement of claims 2, 4, and 9 thereof.   These claims read:

"2. A sheet metal bottle cap provided with a coiled bead at the lower edge of the flange thereof, said bead being collapsed at intervals to provide instruck locking projections."

"4. A sheet metal cap having a vertically corrugated flange formed with a coil enveloping its free edge, and having said coil collapsed at intervals to provide instruck locking projections reinforced by the adjacent corrugations."

"9. A sheet metal bottle cap provided with a rounded bead at the lower edge of the flange thereof, said bead being flattened at intervals to provide locking projections."

The device covered by plaintiff's patent is a metal cap intended to be screwed on glass bottles or jars, locking lugs or projections at the lower edge of depending skirt, engaging the thread of the jar; the said lower edge having a protecting bead or rounded edge. This last-named feature is intended to eliminate the raw edge of the cap at the lower edge of the skirt, thus protecting that part of the cap from any injurious effects of acids, rust, or salts, preventing any danger of the user's hands being cut by the raw edge, and furnishing locking lugs that do not bend out of shape upon the application of force.

Lug caps being old in the art, as both parties agree, there was nothing novel in the feature of the lug.   The defendant claims that there

are certain essentials in plaintiff's patent that are lacking in that of defendant, to wit, coiled-bead, multi-walled projection, out-struck corrugations, and indentations at lugs. The above-mentioned feature of nonbending lugs is secured by turning in the raw edges of the cap, thus making a bead or coil, and utilizing the same metal which made up the bead to form the lugs or projections, at intervals. There seems to be no doubt that never before had the bead and the lug been combined and located at the same spot. The advantages of thus utilizing the same metal for both are that by this method the lug can be forced in further, and thus accommodate itself to variations in jars, and, because several thicknesses of metal are used, the lugs are strengthened.

That plaintiff is entitled to a decree, if defendant's cap is the equivalent of that of plaintiff, requires no discussion. An examination of the prior art offered by defendant discloses that practically all caps mentioned either have lower raw edges, have no lugs, or are not similar (Painter patent, No. 582,762, has no lugs whatever, and is a cap for beer bottle). The Hammer patent, No. 894,633, July 28, 1908, must be critically examined, however, for it is strongly urged by defendant, and if it fails to show a lug combined with a bead at the lower edge of the flange, the defense of prior art must fall. Does this patent show a lug made of or projecting from a coil, bead, or rounded edge? The patentee states that the bead is immediately below the locking projection, and so the question must be answered in the negative. Indeed, the patentee himself stated that he had tried, unsuccessfully, to make the lug in the bead of that patent. There really seems to be no doubt of this, for defendant's attorney stated, during the prosecution of defendant's Wieland patents:

"In the Hammer device, in which the projections simply project inwardly from the skirt and have no connection with the bead, this transmission of forces is not secured and consequently the projections are weak, as is admitted in the patent."

[2] Where a patentee had secured a decree from one court sustaining his patent on a particular theory advanced by him, he cannot in another suit, in which the evidence disclosed anticipation on that theory, abandon it, and successfully contend for an inconsistent theory. Kintner et al. v. Atlantic Communication Co. et al., 240 Fed. 716, 153 C. C. A. 514. We have, too, the opinion of an official of the Patent Office (which cannot be impeached because of interest, and which is entitled to great consideration. Ideal Stopper Co. v. Crown Cork & Seal Co., 131 Fed. 244, 65 C. C. A. 436):

"Claim 9 is rejected on the patent to Hammer, 894,633, of record. To provide indentations in the bead, instead of us shown, would not involve invention."

During the pendency of plaintiff's patent and in reply to this announcement by the Patent Office, plaintiff's attorney said:

"A careful review of the entire art shows that the applicant is the first to combine any kind of a bead, whether partly or wholly coiled, with locking projections forming part of the bead, and it is submitted that the applicant is clearly entitled to the allowance of claim 9."

Thereafter the Patent Office acquiesced, and allowed the claim.

In addition, defendant's claim of prior art cannot prevail, because it appears from the testimony that the Hammer patent, 894,633, was never actually used; indeed, that the cap of that patent was never more than an experiment, and was at no time used commercially.

[3] A prior invention, abandoned, is merely an experiment, and does not affect the rights of another inventor, who takes up the subject and perfects the invention for actual use. Whiteley v. Swayne, 7 Wall. 685, 19 L. Ed. 199. The case of Hall Signal Co. et al. v. General Ry. Co., 169 Fed. 290, 94 C. C. A. 580, is almost identical with the case under consideration. It was there said:

"A patent which was respected by competitors for thirteen years, and which covers a system which has been in successful operation during its entire life, cannot be invalidated by the ambiguous language of a patent which has added nothing of value to the art."

Defendant's cap shows a lug combined with a bead and a comparison of claims 3, 5, 7, 11, and 14 of defendant's patent indicates that they read upon plaintiff's cap. The claims just mentioned read as follows:

"3. As an article of manufacture a closure cap comprising a cover portion, a skirt depending from such cover portion, and a locking projection comprising metal folded upon itself at the lower edge of the skirt portion and extending inwardly at substantially right angles to said skirt portion, the upper fold being integral with the skirt portion and the lower fold extending across the lower limit of the skirt portion."

"5. As an article of manufacture a closure cap comprising a cover portion, a skirt depending from said cover portion, and a plurality of lugs arranged at the lower edge of the said skirt portion comprising metal extending across the margin of the skirt and folded upon itself and rolled outwardly into a wire edge on the lower edge of the said skirt."

"7. As an article of manufacture a closure cap comprising a cover portion, a skirt depending from said cover portion, and a plurality of closed tubular lugs at the lower edge of said skirt."

"11. A closure cap of the character specified comprising a cover portion, an annular skirt depending from said cover portion, a plurality of lugs adjacent the edge of said skirt and comprising segments of metal folded upon itself and integral with the skirt throughout their length."

"14. A closure cap of the character specified comprising a cover portion, an annular skirt depending from said cover portion, a continuous annular bead formed at the lower margin of the skirt portion, a plurality of elongated thread engaging lugs extending substantially perpendicular to the skirt portion, each of said lugs comprising an upper fold connecting with the skirt portion and a lower fold connecting with the annular bead."

The defendant's witness, whose experience and ability cannot be denied gave the following differences between plaintiff's and defendant's caps:

| Plaintiff's Hammer Patent, 1,079,238. | Defendant's Wieland Cap. |
| --- | --- |
| (1) Has coiled bead of 1½ turns completely protecting edge of metal. | (1) Has ordinary "wire edge," which does not protect raw edge of the metal. |
| (2) Coiled bead must be made before locking lugs can be made. | (2) Locking lugs must be made before wire edge can be made. |
| (3) Bead collapsed—i. e., horizontally flattened—to make locking lugs, from metal of the bead. | (3) Locking lug made independently of wire edge from extra metal provided for the purpose. |

(4) Metal in locking lugs multifolded and flattened, with successive layers in contact throughout.

(5) Coiled bead destroyed. Walls smashed and tightly flattened at locking lugs.

(6) Lugs triangular in form with sharp inner edges.

(7) Skirt indented vertically, and shorter at each locking lug, due to vertical smashing of coiled bead.

(8) Skirt indented inwardly to give greater elasticity at the locking projections.

(9) Corrugations all struck outwardly to reinforce locking projections.

(10) Blank circular or round.

(11) Finishing operation is a punching operation.

(12) Lugs inclined like screw threads.

(13) Location of lugs visible when on package.

(14) Flattened lugs, formed by flattening metal and sharply creasing it, tending to weaken metal.

(4) Metal in lugs looped with loops hollow and wire edge tubular. No metal folds in contact.

(5) Wire edge complete, not destroyed. Locking lugs constituted, in effect, by making wire edge of larger horizontal diameter, due to excess metal.

(6) Lugs straight chords of cap circle, with thick inner edges.

(7) Skirt unbroken smooth and slightly longer at each lug, due to vertical enlargement of wire edge.

(8) Skirt not indented, but stiffened by chordal lugs.

(9) Corrugations all struck inwardly. Do not reinforce locking projections.

(10) Blank four-pointed.

(11) Finishing operation is a spinning operation.

(12) Lugs always straight.

(13) Location of lugs invisible when on package.

(14) Tubular lugs, formed by compressing metal edgewise without sharply creasing, tending to strengthen it.

Conceding these differences, many of which are obviously of no consequence, the fact remains that defendant's cap has the features that have been pointed out to be original with the inventor of plaintiff's cap, and it is clear that an article has been produced which accomplished the same result, in the same manner, and has the same effect as plaintiff's cap.

The court cannot escape the conclusion that there is no essential difference between the two caps, and will direct a decree for plaintiff.