## HIRSCHY CO. v. WISCONSIN-MINNESOTA GAS & ELECTRIC HOUSEHOLD APPLIANCES CO.

(District Court, D. Minnesota, Fourth Division. February 24, 1927.)

No. 494.

1. Patents ⊜26(2)—New combination of old elements, or attainment of old result in more facile, economical, and efficient way, is patentable; "patent."

A new combination of old elements, resulting in new and useful result, or whereby an old result is attained in more facile, economical, or efficient way, may be rewarded by "patent."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Patent (of Invention).]

2. Patents ⊜112(3)—Issuance of patent raises presumption of utility and invention.

Issuance of patent raises presumption that it is valid, and the device possesses utility and embodies invention.

3. Patents ⊜112(3)—Official action in granting patent with prior art before them creates presumption of validity.

Action of officials in granting patent with prior art before them creates the presumption that patent is valid.

4. Patents ⊜26(2)—"New and useful result," within meaning of patent law, may be accomplished by reaching old result in new and more effective way (Comp. St. § 9430).

To accomplish a new and useful result within meaning of Rev. St. § 4886 (Comp. St. § 9430), it is not necessary that result before unknown should be brought about, but it is sufficient if an old result is accomplished in a new and more effective way.

5. Patents ⊜26(3)—Invention consisting of slight changes in old construction, making new and successful machine, is patentable.

Where patent invention consists of slight changes in an old construction, making a new and successful machine from an old and ineffective one, invention is patentable.

6. **Patents** ☞328—1,399,482 for clothes wringer held valid.

Hirschy patent, No. 1,399,482, for a clothes wringer, *held* valid.

7. **Patents** ☞328—1,399,482 for clothes wringer, claim No. 1, held infringed.

Hirschy patent, No. 1,399,482, for a clothes ringer, claim No. 1, *held* infringed.

In Equity. Suit by the Hirschy Company against the Wisconsin-Minnesota Gas & Electric Household Appliance Company. Decree for plaintiff.

Figures 1 and 2 of the Hirschy patent, No. 1,399,482, are shown below:

Plaintiff's Exhibit C, representing defendant's machine, is as follows:

FIG. 1.

Paul, Paul & Moore, of Minneapolis, Minn., for plaintiff.

Frank D. Merchant, of Minneapolis, Minn., for defendant.

MOLYNEAUX, District Judge. This is a suit in equity for an injunction and an accounting for infringement of the Hirschy patent, No. 1,399,482, issued December 6, 1921.

It relates to a clothes wringer. The defenses are, as stated by defendant:

"(1) The claim is invalid because the supposed invention which it defines is no invention at all in view of what is disclosed in prior patents.

"(2) If the claim is held valid at all, it must be given such a narrow scope that it is not infringed by the defendant's device."

The patent in suit, No. 1,399,482, was issued December 6, 1921, to Herman C. Hirschy, and was later assigned by Hirschy to the plaintiff, the Hirschy Company; the assignment being recorded in the United States Patent Office on December 15, 1921.

The Hirschy Company is a corporation, and was such at the time of acquiring said patent right, duly incorporated under the laws of the, state of Minnesota.

The Hirschy Company is the owner of the Hirschy patent, and has been the owner of it since the 13th day of December, 1921.

A blueprint, introduced into evidence as Plaintiff's Exhibit C, illustrates the structure of the wringer manufactured by defendant. The said defendant has manufactured said wringer, and had sold the same within the state of Minnesota subsequent to the date of the patent in suit and prior to the beginning of this suit.

Plaintiff's Exhibit C–1 is an advertisement, published by the manufacturers of defendant's machine herein complained of, and correctly represents defendant's wringer and the manner of attaching the same to a washing machine.

In the advertising catalogue, Plaintiff's Exhibit C–2 is an illustration of defendant's wringer attached to a washing machine. Paragraph 1 of page 5 of said catalogue, Plaintiff's Exhibit C–2, contains a further description of said wringer and the advantages thereof.

The plaintiff notified the 1900 Washer Company, Binghamton, N. Y., and this defendant, under date of June 19, 1924, of its infringement of the patent in suit, No. 1,399,-482.

The nature and aim of patentee's invention is stated in the application as follows:

"In the operation of a clothes wringer, provision is made for quick release of the action of one wringer roll upon the other to avoid injury to the fingers or hand of the operator and to enable the operator to withdraw any article from between the rolls during the wringing operation. Generally, in these wringer roll releasing devices, the lower roll is positively driven and continues its operation when the rolls have been separated, and it is desirable to positively stop revolution of the lower roll when the wringing operation ceases.

"The object of my invention is to provide a driving means which, when the rolls are separated, will be automatically disconnected from both rolls and will remain so disconnected until the two rolls are again adjusted in their working position.

"The invention consists generally in various constructions and combinations, as hereinafter described and particularly pointed out in the claims herein."

An examination of figures 1 and 2 of the drawings shows that the machine is provided with a lower roller, 18, and an upper roller, 12, which are geared together by 17, 17a, 20, and 20a. A shaft, 11, is mounted in suitable bearings, and this shaft, which is an extension of the shaft of the upper roll, is provided with a gear, 10, arranged to be driven by a pinion, 9, on a power drive shaft, 7.

By this arrangement, when power is applied from a motor, through the driving gear, 6, the shaft, 7, and gears, 9 and 10; the roll, 12, is driven directly from the shaft, 7, and the roll, 18, is driven from roll, 12.

With this arrangement, the two rolls are driven simultaneously from the same motor; the second or lower roll, being driven from the upper roll.

The upper roll, 12, as seen in figures 1 and 2, has one end of its shaft, 11, mounted in bearings in the housing, 15, the opposite end of said shaft, 11, being mounted in bearings in a housing, 21. This end of shaft, 11, is provided with the pinion, 17a.

The manner of supporting the housings, 15 and 21, is described as follows:

"The housings, 15 and 21, are pivoted at 23 to the housings, 2b and 21b, and allow the upper roll to be lifted away from the lower roll, said pivots, 23, being located on one side of the lower roll and studs, 24, being mounted in the frame of the wringer on the other side of the roll and limited against upward

movement by helical spring, *25*, and provided with lugs, *26*, which bear on the frame, and prevent downward movement of the studs."

The arrangement of the housings, *21a*, and *15*, and *21*, is set forth in the specifications as follows:

"The housing, *21a*, which extends over the upper roll, is provided with a handgrip, *27*, and is pivoted to the housings, *15* and *21*, by pins, *28*, which are mounted on the housings to engage the recessed upper ends of the studs, *24*, and lock the upper and lower rolls in their working position but allowing 'the rolls to separate under pressure of the clothes passing between them, the springs, *25*, yielding for this purpose. This release device is already covered by United States letters patent, and I make no claim to the same herein."

The principal object of the invention is to immediately stop the revolution of both rolls when the upper roll is moved away from the lower roll. This is accomplished by having the drive from the motor directly to the shaft of the upper roll. The lower roll is then driven from the power-driven upper roll. When the upper roll is released and raised, it is moved away from the lower roll, and the drive to the lower roll is positively broken, and cannot be resumed again until the upper roll is returned to its working position.

In reference to this arrangement, the specifications say:

"In this way I am able to positively check further revolution of the lower roll as soon as the release is operated to separate the two rolls.

"An important point in the construction, resulting from the stopping of both rolls, is the complete relief to the motor of the load. In constructions wherein the lower roll is continuously driven, it often happens that the clothes will be wound on this power roll, resulting in such load that the motor will be stalled or burned out. In the improved device there is an absolute relief of the load as soon as the rolls are separated, and, consequently, there is positively no danger of overloading or burning out the motor."

The patentee states in his testimony that this provision of a gearing so combined with the rolls that the upper roll is driven from the power shaft and the lower roll from the upper, when the parts are in comparative position, both rolls being stopped instantly, is the novel feature of the patent.

The advantage of this combination, where-by the operation of both rolls is instantly stopped, over a device such as is exhibited in the Fillingham patent, No. 694,096, cited by the defendant, is obvious. By means of the combination described, the operator can stop the operation of the rolls and separate them immediately by moving the handgrip.

The only addition that Hirschy claims to have made to some other motor (i. e., Dremel) is arrangement of the gears so that the power is applied to the two rolls through a gear on the shaft of the movable roll; in this case, the upper roll. That is Hirschy's contribution.

Hirschy testified:

"Q. In the two roll machines, in which one of the rolls is movable away from the other roll, you applied the power through a gear on the end of the shaft of the movable roll so that when the movable roll is lifted away from the other roll the power is automatically thrown off both rolls? A. Yes, sir.

"Q. That is your contribution? A. Yes, sir."

Both the Hirschy patent and the defendant's patent, that is, the Doughty patent, the claimed infringing machine, are of the conventional quick release type, in which one roll is held against the other by a spring or other restraining means, and which is provided with a tripping mechanism, which may be tripped, when desired, to release the restraining means and free the movable roll for movement away from the fixed roll. The quick release mechanism is a safety device, which, in one form or other, has been in use for years. The upper roll in plaintiff's machine and the lower roll in defendant's machine is made the yielding roll. The release forms no part of the claimed invention in either machine. In the defendant's machine the shaft of the upper roll is mounted in sliding blocks, and these are connected by links to a member hinged upon the frame, this construction being shown in figures 3 and 4 of the Doughty patent, No. 1,542,439.

The defendant's wringer was manufactured by an old and well-established washing machine manufacturer, the 1900 Washing Machine Company of Binghamton, N. Y. Doughty, the engineer of that company, who devised the wringer, did so without knowledge of the Hirschy machine or activity in that regard until he himself had filed a patent application covering the wringer now complained of.

The Patent Office granted Doughty's patent (No. 1,542,439) after the grant of the Hirschy patent.

1. The plaintiff claims a combination of old mechanical elements in a new way.

[1] A new combination of old elements resulting in a new and useful result, or whereby an old result is attained in a more facile, economical, and efficient way, may be rewarded by patent "as securely as a new machine or composition of matter." National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co. (C. C. A.) 106 F. 693; Fairbanks, Morse & Co. v. Stickney (C. C. A.) 123 F. 79; Detroit Motor Appliance Co. v. Burke (D. C.) 4 F.(2d) 118.

[2] The issuance of the patent raises the presumption that it is valid; that the device possesses utility and embodies invention. Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939; Wilkin's Shoe-Button Fastener Co. v. Webb et al. (C. C.) 89 F. 982; Detroit Motor Appliance Co. v. Burke (D. C.) 4 F (2d) 118.

[3] The action of the officials in granting the patent with the prior art before them creates a presumption that the patent is valid. Fairbanks, Morse & Co. v. Stickney, supra.

The prior art relied on by the defendants is seven patents:

| Goss | 125,129 | April 2, 1872 |
| Browning | 180,837 | August 8, 1876 |
| Fillingham | 694,096 | February 25, 1902 |
| Phillips | 950,402 | February 22, 1910 |
| Stocking | 1,247,894 | November 27, 1917 |
| Snyder | 1,316,601 | September 23, 1919 |
| Bailey & Couch | 34,178 | January 14, 1862 |

The history of the case in the Patent Office shows that the Browning, Goss, and Snyder patents were cited by the examiner during the prosecution of the Hirschy application for the present patent.

It is urged by the defendant that the Fillingham patent completely anticipates the patent in suit. It is claimed that the Fillingham patent discloses everything that Hirschy claims to have invented.

The idea of the instant and immediate separation and stoppage of the rolls employed in the Hirschy structure and in the defendant's machine is wholly lacking in the Fillingham machine.

The separation and stoppage of the rolls in the Fillingham patent was effected by means of eccentric bearing sleeves. The movement of the movable roll away from the other roll and the stoppage of the two rolls is brought about in the Fillingham structure by the movement of eccentrics that are on the shaft of the movable roll. This is explained and made clear by the testimony of Hirschy and Doughty.

Hirschy testified as follows:

"Q. Now, assuming that it was necessary to release or move the rolls apart by an eccentric bearing that caused the rolls to rotate for half of a turn or a quarter of a turn before they separated, would that be practicable in a washing machine? A. It couldn't be done in a quarter turn, because an eccentric does not go to its farthest point until it has reached a half turn. It is impossible to make an eccentric that does not do that, and there would be a certain amount of pulling power in that operation, and whatever was in between the rolls would necessarily be pulled into the roll half the diameter of the roll.

"Q. Would such a structure be practicable to use in a washer? A. It would not.

"The Court: Why would it not be—for the reason that it would not give the release required?

"The Witness: The release on the wringer is used for so many causes. Sometimes a large button or a great big bunch is going to go in there, and the operator wants to release it immediately, and a half turn would not accomplish that; would stall the wringer or do the damage they want to eliminate.

"Q. You say it is essential that the release of the wringer should be immediate? A. Yes."

Doughty testified as follows:

"Q. Let me ask you a few questions about this Fillingham patent: It is a fact, isn't it, that with the Fillingham structure the movement of the movable roll away from the other roll and from the driving gear is brought about by the movement of the eccentrics that are on the shaft of the movable roll? A. Yes.

"Q. When the operator wishes to stop the movable roll, this bar, 25, is moved, and connection is made so that the further turning of the roll causes the eccentrics to turn, that's right? A. The operator moves bar, 30.

"Q. Moves the part that makes the connection so that the further turning of the movable roll on its axis causes the eccentrics to turn, that's right? A. Yes.

"Q. And the movable roll moves away from the fixed roll only so fast and so far as it is permitted to move by the moving of the eccentrics? A. Yes.

"Q. So that the movable roll can move away only to an extent equal to the fixed part of the eccentrics? A. Yes.

"Q. That's right, and that movement is necessarily somewhat slow—as the eccentrics turn the movable roll moves away from

the fixed roll? A. Of course, that depends upon the speed of the roll.

"Q. That depends upon the speed of the roll, but it is a fact, isn't it, that as shown here it takes nearly a revolution—more than half a revolution of the movable roll—to turn the eccentric from its thickest position to its thinnest? A. About a quarter revolution, I would say.

"Q. You would say a quarter? A. Oh, roughly, a quarter, I would think.

"Q. Well, the patent says: 'The eccentricity of the walls of the sleeves is sufficient so that in less than a revolution of the rolls the gear wheel will be moved upward and outward wholly out of engagement with pinion, 33, as clearly shown in figure 4, and the rolls will also be separated an equal distance, thus relieving the pressure should a hand be caught between them, the separation of the rolls commencing the instant the eccentric bearing sleeves commence to turn.' That's true, isn't it? A. I presume so.

"Q. And there is no immediate release of the pressure when the operator turns the bar, 25, and the eccentric begins to turn? A. Relief begins.

"Q. Relief begins, but it is not complete? A. It is not instantaneous.

"Q. It is not instantaneous, and it never exceeds the thickness of the eccentric, that is, the movement never exceeds that thickness of that eccentric? A. That's right.

"Q. And that position of the roll is always a rigid position, isn't it? A. Yes.

"Q. And, if the hand gets in between the rolls, the roll begins—the movable roll begins to move away, and it takes a quarter, and I say, a half, turn of the roll to get the roll out to its farthest position and for the roll to stop its movement, that's right, isn't it? A. Approximately, yes."

Taking into consideration that the Fillingham machine was a part of the prior art at the time the examiner passed upon the patent in suit, and taking into consideration the difference between the two machines pointed out, I am not satisfied that the Fillingham patent anticipated the patent in suit. It appears to me that the present patent in comparison with the Fillingham patent accomplished an old result more efficiently.

[4] "To accomplish a new and useful result within the meaning of the patent law (section 4886, Rev. St. [U. S. Comp. St. 1901, p. 3382]) it is not necessary that a result before unknown should be brought about, but it is sufficient if an old result is accomplished in a new and more effective way. If the value and effectiveness of a machine are substantially increased, the new combination of old elements, which does it, is patentable." St. Louis Street Flushing Co. v. American Street Flushing Co., 156 F. 574, 84 C. C. A. 340; Detroit Motor Appliance Co. v. Burke (D. C.) 4 F.(2d) 118, 119.

Hirschy's machine is more effective, in that it accomplishes the immediate and instantaneous stoppage and separation of the rolls, and that is effected by the arrangement of the gears. The defendant seeks, by the testimony of its witness, Doughty, to show that it would be practicable to apply the principle of the Fillingham patent, No. 694,-096, to the Snyder patent, No. 1,316,601, and produce the Hirschy invention.

On cross-examination the witness testified:

"Q. But, in order to make up the Hirschy device, having seen the Hirschy device—you are going to take Snyder, and then you are not going to take what Fillingham shows and describes and claims, but you are going to change from Fillingham? A. I am going to take the essential features of Fillingham and apply them to Snyder.

"Q. What do you consider the essential features—the eccentric bearing sleeves? A. His use of movable roll which by its movement is carried away from its mating roll and from its source of power.

"Q. And what means are you going to use to move that? A. Under the assumption, I was going to use Snyder's means.

"Q. But Snyder's means are not applied to the roll that has the power. A. Neither are Fillingham's.

"Q. You think you could take the Snyder device and the Fillingham device, and, taking parts from one and parts from the other, you could put them together and make a Hirschy machine? A. Yes.

"Q. But in doing that you wouldn't use Fillingham eccentric bearing sleeves? A. Well, not when it was proposed to use the Snyder patent in connection with it.

"Q. You would change that? You would not use any of the Snyder mechanism, but only the Snyder idea of moving the rolls? A. Well, you could use the two gears of Snyder, which gear the two rolls together—same as Hirschy does.

"Q. But something else beside the eccentric bearing sleeves? A. In place of Fillingham bearing sleeves."

The witness thus attempted to build up an anticipation of plaintiff's patent by changing and combining parts of structures of prior patents. In Detroit Motor Appliance Co. v. Burke, supra, Judge Booth said: "It

must be borne in mind, in considering these prior patents as anticipations, that it is not permissible to modify the structures disclosed by such patents, and then claim the modified structure as an anticipation. Eames v. Andrews, 122 U. S. 40, 66, 7 S. Ct. 1073, 30 L. Ed. 1064; Topliff v. Topliff, 145 U. S. 156, 161, 12 S. Ct. 825, 36 L. Ed. 658; Hobbs v. Beach, 180 U. S. 383, 392, 21 S. Ct. 409, 45 L. Ed. 586; Canda v. Michigan Malleable Co. (C. C. A.) 124 F. 486, 61 C. C. A. 194; Ideal Stopper Co. v. Crown Cork & Seal Co., 65 C. C. A. 436, 131 F. 244; J. L. Owens Co. v. Twin City Sep. Co., 93 C. C. A. 561, 168 F. 259, 265."

In Naylor v. Alsop Process Co. (C. C. A.) 168 F. 911, Judge Amidon said: "When it is sought to ascertain the state of the art by means of prior patents, nothing can be used except what is disclosed on the face of those patents. Such patents cannot be constructed in the light of the invention in suit, and then used as a part of the prior art."

The value and effectiveness of the Hirschy structure is shown in the evidence, and an observation of the operation of the machine clearly shows this. I cannot find that the Hirschy patent has been anticipated by any of the patents cited. It appears to me that Hirschy has made a valuable improvement in wringers, and that his combination is new, useful, and effective, and that no such structure exists in the prior art. Many authorities hold that changes from prior art structures to structures of the patents in suit were exceedingly simple, and the courts have said that the fact that the improvements had not before suggested themselves to those skilled in the art is evidence of invention.

[5] Many of the decisions illustrate the principle that, where the patent invention consists of slight changes in an old construction, making a new and successful machine from an old and ineffective one, the invention is patentable. From the many cases I will cite only several:

In Topliff v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 828 (36 L. Ed. 658), a slight change in a design to equalize the springs of a wagon was held patentable. Without the slight change made by the patentee, the equalizing function was not attained in the old structure. The court said: "It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions."

In Keystone Manufacturing Co. v. Adams, 151 U. S. 139, 14 S. Ct. 295, 38 L. Ed. 103, the Supreme Court held the invention patentable. A slight change had been made in the structure of a corn sheller. The Supreme Court found that in prior patents there were substantially the same structural elements, and the purpose sought to be effected was the same, but it said: "When the test of practical success is applied, the conclusion is favorable to the last patent."

The court further said: "Where the patented invention consists of an improvement of machines previously existing, it is not always easy to point out what it is that distinguishes a new and successful machine from an old and ineffectual one. But when, in a class of machines so widely used as those in question, it is made to appear that at last, after repeated and futile attempts, a machine has been contrived which accomplishes the result desired, and when the Patent Office has granted a patent to the successful inventor, the courts should not be ready to adopt a narrow or astute construction, fatal to the grant."

In Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527, the patentee grant made a slight change, from prior devices, in the metal rim used on automobile wheels. The only change made from prior devices was to give the walls of the metal rim, in which the rubber tire was sealed, an outward flare, so that, when the carriage went around a corner, the tire could partially roll out, and then automatically come back to its seat. The Supreme Court, referring to this device, said: "The tire has utility, a utility that has secured an almost universal acceptance and employment of it, as will subsequently appear. It was certainly not an exact repetition of the prior art. It attained an end not attained by anything in the prior art, and has been accepted as the termination of the struggle for a completely successful tire. It possesses such amount of change from the prior art as to have received the approval of the Patent Office, and is entitled to the presumption of invention which attaches to a patent. Its simplicity should not blind us as to its character. Many things, and the patent law abounds in illustrations, seem obvious after they have been done, and, 'in the light of the accomplished result,' it is often a matter of wonder how they so long 'eluded the search of the discoverer and set at de-

fiance the speculations of inventive genius.' Pearl v. Ocean Mills, 2 Bann. & Ard. 469, Fed. Cas. No. 10876, 11 Off. Gaz. 2. Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skillful attention. But the law has other tests of the invention than subtle conjectures of what might have been seen and yet was not. It regards a change as evidence of novelty, the acceptance and utility of change as a further evidence, even as demonstration."

[6] I think in the present case the patentee produced a new and novel feature in the clothes wringer, obviating injuries to the person of the operator, and damage to the material passing through the wringer, and to the machine. It is a successful invention. This is clear upon observation of the machine. I hold that the patent is valid.

2. Infringement of plaintiff's patent by defendants is claimed. Comparing the Hirschy and Doughty patents, element by element:

(1) There is in the Doughty patent a frame, 10 (referring to the numbering in the Doughty patent), provided with a fixed section and a movable section, 18, hinged thereto.

(2) The lower roll is journaled thereto.

(3) The upper roll is journaled in blocks, 13, connected by link, 17, to the hinged section, 18.

(4) Defendant's structure is provided with the gear, 30, constituting "mechanisms spaced from the fixed section roll for normally driving both rolls through the shaft on movable section roll"; that is, the gear, 31, on the shaft of the upper roll, is engaged by the gear, 30, and the gear, 31, also engages, in the Doughty patent, the gear, 32, on the lower roll. The gear, 30, corresponds to the gear, 9, on shaft, 7, of the Hirschy patent (comparing Fig. 3 of the Doughty patent with 1 of the Hirschy patent). In the defendant's construction the gear, 32, is omitted, and the lower roll is driven by friction from the upper roll.

(5) This mechanism, that is, gear, 30, is "rendered inactive for driving either roll upon movement of said movable section and its roll from said fixed section roll"; that is, when the upper roll, 11, is moved away from the lower roll, its gear, 31, is disengaged from the driving gear, 30, and both rolls are instantly rendered inactive. In the Doughty patent it is said: "When it is desired to separate the rolls as in the case of an emergency when the operator's fingers have been caught between them, the latch, 19, is released by depressing the handle or lever, 42 (Figs. 1 and 2). This immediately relieves the pressure between the rolls, and, because of the action of the spring, 42 (Figs. 1 and 6), the cover immediately opens wide, into the position shown in Fig. 4. In so moving, the cover carries with it the upper roll whose bearing blocks, as above described, are connected to the cover through the projections, 17, of the cover and the races or tracks, 15, of the bearing blocks. This upward movement of the upper roll not only leaves a wide space between the two rolls in which no part of the operator's anatomy can possibly be caught, but also, by separating the driving gear, 31, from the power driven gear, 30 (and from the driving gear, 32, if one be used), it also shuts off all power from the rolls."

While the Doughty construction differs somewhat in detail from the Hirschy construction, I think it is substantially the same, and results in identical operation with the Hirschy machine. As is said in Plaintiff's Exhibit C-1 (an advertisement of the 1900 Washer Company): "Tripping the one lever disconnects the power absolutely from both rolls. Both rolls stop instantly, leaving an extra wide space between them."

There is substantially the same construction and same operation in both machines. There is some difference in the detail of the construction, and there is the same advantage from immediate stoppage of both rolls and separation of the same. Both machines resulted in the same novel operation and in the same advantage. The essential principle of the Hirschy patent is embodied in defendant's machine, and this is attained by the use of the same elements, though of a slightly different construction in detail. This is immaterial.

In the Brake Beam Case Judge Sanborn said: "Mere changes of the form of a device or of some of the mechanical elements of a combination secured by patent will not avoid infringement, where the principle or mode of operation is adopted, unless the form of the machine or of the elements changed is the distinguishing characteristic of the invention. Watch Co. v. Robbins, 64 F. 384, 396, 12 C. C. A. 174, 187, 22 U. S. App. 601, 634; New Departure Bell Co. v. Bevin Bros. Mfg. Co. (C. C.) 64 F. 859," 106 F. 693, 711.

In Owens Co. v. Twin City Separator Co. (C. C. A.) 168 F. 259, Judge Sanborn said: "But the description in a specification or drawing of a form, or a composition, or construction, of a mechanical element, when that form, composition, or construction is not, and is not claimed to be, essential to the combination or improvement claimed, is the mere pointing out of the best mode in which the patentee contemplated applying the principle of his invention under section 4888, Rev. St. (U. S. Comp. St. 1901, p. 3383), and does not deprive him of protection for mechanical equivalents or indicate that he intended to give up all other modes of application. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 418, 28 S. Ct. 748, 52 L. Ed. 1122; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 45 C. C. A. 544, 566, 106 F. 693, 715; City of Boston v. Allen, 91 F. 248, 249, 33 C. C. A. 485, 486."

[7] I think the changes in the defendant's machine are merely in form, and that they do not modify the principle or mode of operation of the Hirschy machine. They infringe, in my opinion, claim 1 of plaintiff's patent.

Summing up: I hold the Hirschy patent, No. 1,399,482, issued December 6, 1921, is owned by the plaintiff, the Hirschy Company; that claim No. 1 of the above referred to patent is infringed by the defendant's machine, and that plaintiff is entitled to an injunction and accounting as prayed for in the bill.

A decree may be prepared in accordance with this decision and submitted to counsel for the defendant before being submitted for signature.