### THE WISSOE.

(District Court, D. Massachusetts. September 21, 1915.)

No. 1080.

SALVAGE ⊚�جج16—AID TO BURNING VESSEL—NATURE OF SERVICE.

A lighter, which was under contract with a city to act as a fireboat when called upon, *held* to have acted in that capacity when she went to the assistance of a burning vessel in the harbor, but entitled to salvage for the work of her master and crew, who voluntarily performed services not required by the contract.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. § 29; Dec. Dig. ⊚�=16.]

In Admiralty. Suit by Thomas E. Reed and others against the gasoline screw yacht Wissoe. Decree for libelants.

Edgar S. Taft, of Gloucester, Mass., for libelant.
Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for claimant.

MORTON, District Judge. This is a libel to recover compensation for salvage services rendered to the Wissoe. The facts are as follows:

The Wissoe, a gasoline motorboat, caught fire in the outer harbor of Gloucester, which is within the city limits. Her master and crew were taken off by the life saving crew, and she was towed out of the channel and anchored some little distance offshore. An effort was made by the officer of the life saving crew to get the fireboat from Gloucester, but by mistake land apparatus was sent. A second effort was made to get the fireboat, which resulted in a telephone message being sent by an onlooker to the office of the libelants, the owners of the fireboat. This message notified them that a vessel was on fire in the outer harbor and that the assistance of the fireboat was desired. In response thereto, the fireboat Phillip proceeded at once to the Wissoe. Before reaching her, she received on board several men of the life saving crew. By the efforts of her own crew, assisted by these members of the life saving crew, the fire on the Wissoe was extin-

guished, and she was saved from what would otherwise have been total destruction. The value of the Wissoe was $2,000. She had on board about 200 gallons of gasoline. In order to extinguish the fire, it was necessary for the Phillip to approach her so closely as to be in danger if the gasoline tanks should explode. The libelant Reed, who was in command of the Phillip, was cautioned, both by the officer of the life saving crew and also by the master of the Wissoe, not to approach her as closely as he did. The value of the Phillip, including her fire-fighting apparatus, was about $10,000. This property was to some extent imperiled by the salvage work, and the men engaged in it were exposed to some danger.

The Phillip is a steam lighter owned by the libelants. Several years before the incident in question, her owners had made a contract with the city of Gloucester which provided, in substance, that the city of Gloucester should install fire-fighting apparatus on the Phillip; that the Phillip should at all times be kept by the libelants manned and in readiness to get under way; that she should respond to certain fire alarm signals, and should go, whenever ordered by the chief of the fire department of the city of Gloucester, to assist in extinguishing fires within the city limits. No bell signal was sounded, and no order was given to the Phillip by the fire chief in this instance. Her owners assert that they were not obliged by their contract with the city to render assistance to the Wissoe, and that they are therefore entitled to salvage. If such an order had been given, it would clearly have been the duty of the Phillip to proceed to the Wissoe and there place herself at the disposition of the Gloucester fire department. It was no part of the duty of the owners or crew of the Phillip actively to assist in extinguishing fires beyond operating her apparatus, although they had done so on previous occasions, nor to incur peril, either to the Phillip or to themselves, except in obedience to express and reasonable orders.

It is plain that no salvage is recoverable for services which were required by or performed under the contract. The mere absence of the bell signals or order therein specified does not, it seems to me, establish that the Phillip was acting in a private, rather than a public, capacity. Her owners, learning of a fire in Gloucester harbor which it would be their duty to attend upon signal or order, might, without waiting therefor, proceed to the fire. In so doing, they would plainly be acting in furtherance of the purposes and general obligations of the contract. I accordingly find that the Phillip attended the fire in question as a public fireboat.

Having arrived there, she found nobody connected with the fire department to give further orders. Her owner, Reed, thereupon took command of the situation, and proceeded, on his own initiative, with the assistance of some of the life saving crew, to extinguish the fire. He was certainly not required to do this by the contract; the libelants had fully performed their obligations thereunder by going to the fire. It is not shown that they intended to render gratuitous service; they

were endeavoring to fulfill their obligations under the contract in an alert and helpful manner. Their act in proceeding to the fire without waiting for formal orders is not a sufficient reason for holding that their service in excess of what was contemplated by the contract was gratuitous. It was salvage service, and no sufficient reason appears for denying compensation for it. The Blackwall, 10 Wall. 1, 19 L. Ed. 870.

The excess, or salvage, service constituted a comparatively small part of the total service rendered. It did, however, involve some risk both to the persons and property engaged in it, which the libelants were under no obligation to incur. Under the contract, the libelants, if they had been ordered to the fire, would have been entitled to $15 an hour from the city for the 2½ or 3 hours during which the service lasted. They took their chance of not getting this by not waiting for orders, and are not legally entitled to it as against the city of Gloucester. As things turned out, no injury was sustained by the Phillip or any of her crew, and the extra service consisted simply in using the fire-fighting apparatus. In The Evolution (D. C.) 199 Fed. 514, a tug going to the assistance of a vessel which had broken away from her anchorage in Boston outer harbor was awarded $50 salvage, about one-twelfth of the value of the vessel. The tug incurred no danger, and the commercial rate for the service rendered would have been about $6. In this case the property is worth about three times as much, and appreciable risk was incurred. Under all the circumstances, I think the libelants are entitled to an award of $150.

Decree for libelants for $150.