## DETROIT MOTOR APPLIANCE CO. v. BURKE et al.

(District Court, D. Minnesota, Fourth Division. January 6, 1925.)

1. Patents ☞45—Where all claims are for combination, presumption is that elements are old, or not patentable.

Where each of the claims of a patent are combination claims, it is presumed that all the elements are old, or not patentable.

2. Patents ☞41—That all elements are old not conclusive against patentable novelty or invention.

That all the elements of a combination are old is not conclusive against patentable novelty, nor against possibility of invention.

3. Patents ☞112(3)—Validity, utility, and invention presumed from issuance of patent.

The issuance of a patent raises a presumption of its validity and that the device possesses utility and embodies invention.

4. Patents ☞72—Where anticipation and lack of invention are set up as defenses, "anticipation" will be presumed to be used in its strict sense.

Where both anticipation and lack of invention are set up as defenses, it will be presumed that the term "anticipation" is used as meaning a disclosure in the prior art of a thing which is substantially identical with the device against which it is cited.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Anticipation.]

5. Patents ☞328—1,114,246, claims 1 to 4 and 5, 6, and 8, held not anticipated.

Furber patent, No. 1,114,246, for a temperature controlling apparatus for internal combustion engines, claims 1 to 4, inclusive, and claims 5, 6, and 8, held not anticipated by Hammond patent, No. 46,898, Hoiland patent, No. 1,079,765, or French patent, No. 317,521, to Fouche and Bochet, 1902.

6. Patents ☞66—Prior patents cannot be considered as anticipations by construing disclosures of different patents together, or by modifying structures disclosed.

In considering prior patents as anticipations, it is not permissible to modify the structures disclosed by such patent and then claim the modified structure as an anticipation, nor is it permissible to put together disclosures of several different patents to produce an anticipating structure.

7. Patents ☞66—In ascertaining state of prior art, only disclosures on face of prior patents can be used.

When it is sought to ascertain state of art by means of prior patents, only disclosures on face of those patents can be used, and such patents cannot be reconstructed in the light of the invention in suit, and then claimed to be part of the prior art.

8. Patents ☞26(2)—Patentability of combination dependent on new and useful result, or old result produced in better way, or increase of efficiency of old process.

The tests to determine whether a combination is patentable are: Has the efficiency of an old process been increased, or has a new and useful result been reached, or has an old result been produced in a better, cheaper, or more effective way?

9. Evidence ☞83(1) — Patents ☞112(1) — Patent office presumed to have considered other patents in prior art than those cited in file wrapper.

It is presumed that officials of Patent Office, in issuing patent, did their duty, and in determining the state of the prior art considered other patents than those cited in file wrapper.

10. Patents ☞234—Decreased efficiency of device held not to avoid charge of infringement.

Decreased efficiency of a device does not avoid a charge of infringement.

11. Patents ☞247—Addition of an extra element to a combination held not to avoid infringement.

The addition of an extra element to a combination does not avoid infringement.

12. Patents ☞328—No. 1,114,246, for temperature controlling apparatus for internal combustion engines, claims 1 to 4, inclusive, and claims 5, 6, and 8, held valid and infringed.

Furber patent No. 1,114,246, for temperature controlling apparatus for internal combustion engines, claims 1 to 4, inclusive, and claims 5, 6, and 8, held valid and infringed.

In Equity. Patent infringement suit by the Detroit Motor Appliance Company against Edmund Burke and another. Decree for plaintiff.

Paul, Paul & Moore, of Minneapolis, Minn., and C. B. Belknap, of Detroit, Mich., for plaintiff.

F. A. Whiteley, of Minneapolis, Minn., and Charles W. Hills and Charles W. Hills, Jr., both of Chicago, Ill., for defendants.

BOOTH, District Judge. The above-entitled cause came regularly on, and was duly heard and submitted upon bill, answer, and proof. The suit is for an injunction and for an accounting, for damages and profits on account of alleged infringement of United States patent No. 1,114,246, to F. N. Furber, entitled "temperature controlling apparatus for internal combustion engines."

The patent was issued October 20, 1914; application filed March 31, 1914. Plaintiff became the owner of said patent by mesne assignments from the inventor. One of the purposes or aims of the alleged invention is stated in the specification as follows:

"When an automobile is operated in cold weather, it is found that the cooling system carries the heat away from the engine so rapidly that its temperature is reduced below the point at which it can operate at its highest efficiency. * * * The present invention has for its primary object to devise means for controlling, automatically, the rate of radiation of heat by the water-cooling system in such a manner as to maintain the engine at substantially all times during its operation, at an efficiently operative temperature."

There are eight claims in the patent, all of which are relied upon, excepting the seventh, which was withdrawn during the trial. The second claim, which is fairly typical of the first four, reads as follows:

"In an automobile, the combination with an internal combustion engine and a water-cooling system therefor, including a radiator, of means adjustable to obstruct more or less the flow of air through the radiator and mechanism for adjusting said means automatically in accordance with the temperature of the water in said system."

The sixth claim, which is typical of the remaining ones, reads as follows:

"In an automobile, the combination with an internal combustion engine and a water-cooling system therefor, including a radiator, of a series of adjustable shutters arranged to obstruct more or less the flow of air through the radiator, depending upon their adjustment, and a thermostat in said cooling system, connected with said shutters, to adjust them in accordance with changes in the temperature of the water in said system."

The elements involved are: (1) An internal combustion engine. (2) A water cooling system therefor. (3) A radiator (being part of the cooling system). (4) Shutters, which are adjustable, to regulate the flow of air through the radiator. (5) The thermostat, which is controlled by the temperature of the cooling water, and which in turn controls the adjustment of the shutters. All of these elements are to be combined in an automobile.

[1] It is apparent that each of the claims are combination claims. It is therefore presumed that all of the elements are old or not patentable. Richards v. Chase Elev. Co., 159 U. S. 477, 486, 16 S. Ct. 53, 40 L. Ed. 225; Hay v. Heath Cycle Co., 71 F. 411, 413, 18 C. C. A. 157; Campbell v. Conde Imp. Co. (C. C.) 74 F. 745.

[2] But the fact that all of the elements are old is not conclusive against patentable novelty. Allen v. Grimes (C. C.) 89 F. 869. Nor does the fact that all of the elements are old preclude the possibility of invention. Expanded Metal Co. v. Bradford, 214 U. S. 366, 381, 29 S. Ct. 652, 53 L. Ed. 1034; Steiner, etc., Co. v. Tabor Co. (C. C.) 178 F. 831, 839; St. Louis Street Flushing Co. v. American Street Flushing Co., 156 F. 574, 84 C. C. A. 340. In the last cited case, the court said:

"To accomplish a new and useful result within the meaning of the patent law (section 4886, Rev. St. [U. S. Comp. St. 1901, p. 3382]), it is not necessary that a result before unknown should be brought about, but it is sufficient if an old result is accomplished in a new and more effective way. If the value and effectiveness of a machine are substantially increased, the new combination of old elements, which does it, is patentable."

[3] The issuance of the patent raises the presumption that it is valid; that the device possesses utility and embodies invention. Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939; Wilkins Shoe-Button Fastener Co. v. Webb et al. (C. C.) 89 F. 982.

The foregoing principles are elementary and should be borne in mind in considering the defenses. The answer sets up three main defenses: (1) Anticipation. (2) Want of invention in view of the prior art. (3) Noninfringement.

### Anticipation.

[4] The anticipation relied upon is by three prior patents, viz.: Patent No. 46,898, Hammond, March 21, 1865; patent No. 1,079,765, Hoiland, November 25, 1913; French letters patent No. 317,521, Fouché and Bochet, published September 8, 1902. Inasmuch as both anticipation and lack of

invention are set up as defenses, it will be assumed that the term "anticipation" is used in its strict sense, and that by it is meant the disclosure in the prior art of a thing which is substantially identical with the device against which it is cited.

Hammond, No. 46,898, March 21, 1865.

This is a device for regulating a house ventilator. There is no internal combustion engine, no water cooling system, and no shutters to regulate the flow of air through a radiator. The main similarity between Hammond and Furber is that both make use of a thermostatic element for the operation of levers. Such an element, however, is concededly old in the prior art; but the particular art to which the Hammond patent relates is entirely different from the art to which the Furber patent relates, and the structures are entirely dissimilar.

Hoiland, No. 1,079,765, November 25, 1913.

This is a patent for a wind shield for an automobile radiator. It is in the same art as the Furber patent. It differs, however, from Furber in many respects:

(1) It has no independent thermostatic element, but makes use of the whole volume of water in the cooling system, in lieu of such independent thermostatic element. The expansion of this water, caused by being heated by the engine, operates a piston, which in turn operates a shutter in front of the automobile radiator.

(2) Hoiland is dependent on the volume of water, so far as it is operative as a thermo-motor device. When the volume of water decreases slightly, Hoiland can operate only as a steam pressure device.

(3) Hoiland will not operate with a leaky radiator. This is expressly stated in the specifications.

(4) Hoiland has no vent, but the cooling system is a closed one.

According to the testimony of experts in the case, this makes the Hoiland device impracticable to use in the modern automobile, owing to the danger of causing the radiator to explode or collapse. The evidence shows that the radiators of all modern automobiles have vents.

French Patent No. 317,521, Fouche and Bochet, 1902.

This is described as a new system of regulating the temperature of a fluid by means of a surface heat changer. The device consists of a hermetically sealed cooling receptacle, surrounded by a box, having a fan at one end and a shutter at the other end of the box, to regulate the flow of air. The shutter may be operated by hand or automatically by means of a lever attached at one of its ends to the movable core of a solenoid. The specification states:

"The electric current, which actuates the solenoid, may come from any suitable source of electricity carried by means of a system of suitable contacts placed on a thermometer. These contacts are established by the mercury of the thermometer when the mercury rises at a predetermined temperature."

It is apparent, from the whole description of the device given in the specifications, that it was intended to supply a means of cooling a stationary engine, without wasting the cooling water.

[5] In this French patent, as in Hoiland, the hermetically sealed receptacle renders the device inapplicable to an automobile, and therefore prevents the French patent from responding to the claims of the Furber patent. In my judgment, no one of the foregoing patents can be regarded as an anticipation of Furber.

[6] It must be borne in mind, in considering these prior patents as anticipations, that it is not permissible to modify the structures disclosed by such patents, and then claim the modified structure as an anticipation. Eames v. Andrews, 122 U. S. 40, 66, 7 S. Ct. 1073, 30 L. Ed. 1064; Topliff v. Topliff, 145 U. S. 156, 161, 12 S. Ct. 825, 36 L. Ed. 658; Hobbs v. Beach, 180 U. S. 383, 392, 21 S. Ct. 409, 45 L. Ed. 586; Canda v. Michigan Mallable Co., 124 F. 486, 61 C. C. A. 194; Ideal Stopper Co. v. Crown Cork & Seal Co., 131 F. 244, 65 C. C. A. 436; J. L. Owens Co. v. Twin City Separator Co., 168 F. 259, 265, 93 C. C. A. 561.

Nor is it permissible to put together the disclosures of several different patents, to produce an anticipating structure. Imhaeuser v. Buerk, 101 U. S. 647, 660, 25 L. Ed. 945; Parks v. Booth, 102 U. S. 96, 104, 26 L. Ed. 54; J. L. Owens Co. v. Twin City Separator Co., 168 F. 259, 93 C. C. A. 561; St. Louis Street Flushing Mach. Co. v. American Street Flushing Mach. Co., 156 F. 574, 579, 84 C. C. A. 340.

Was There Invention in View of the Prior Art?

The foregoing patents, as well as the following patents, were offered in evidence as part of the prior art: Brock, No. 774,556, November 8, 1904. Lanchester, No. 596,271, December 28, 1897. Pike, No. 367,660, August 2, 1887. Westinghouse, No. 710,385, September 30, 1902.

Brock and Lanchester were before the Patent Office during the prosecution of the Furber application, and it is not necessary to discuss them in detail. I have examined them, however, together with the evidence relating to them, and concur in the result reached by the Patent Office, differentiating and approving the Furber patent. The seal of approval of the Patent Office should not be lightly set aside. Fairbanks Morse & Co. v. Stickney, 123 F. 79, 59 C. C. A. 209; Brill v. North Jersey St. Ry. Co. (C. C.) 124 F. 778; United Shirt & Collar Co. v. Beattie (C. C.) 138 F. 136; Kelsey Co. v. James Spear Co. (C. C.) 155 F. 976; American Caramel Co. v. Glen Rock Co. (D. C.) 201 F. 363.

The Pike patent relates to the art of heating and ventilating houses. It employs a thermostatic element in the form of an expansible rod to open the damper. The employment of this thermostatic element in the device is the nearest point of similarity to Furber.

Westinghouse is for a gas engine. It shows a device for regulating the temperature of the water, leaving the jacket of the engine, by regulating the supply of fresh cool water going into the jacket. The device consists of a thermostatic element, consisting of an expansible rod placed near the outlet of the discharge pipe. This rod, when expanded by the heat of the water, pushes against a lever, which in turn is connected with other levers, which operate to open wider the valves of the intake pipe. The employment of a thermostatic element is here also, the only point of similarity to Furber.

[7] It must be remembered that the prior art relied upon in the case at bar consists entirely of patents, and the rule is, "when it is sought to ascertain the state of the art by means of prior patents, nothing can be used, except what is disclosed on the face of those patents. Such patents cannot be reconstructed in the light of the invention in suit, and then used as part of the prior art." Naylor v. Alsop Process Co., 168 F. 911, 94 C. C. A. 315.

[8] Such being the state of the prior art, the question arises: Was the Furber combination patentable? As stated above, it is conclusively presumed that no one of the elements, taken by itself, was patentable; but it does not follow, because each of the elements is old and nonpatentable, that the patent covering the combination is invalid. The tests are: Has the efficiency of an old process been increased, or has a new and useful result been reached, or has an old result been produced in a better, cheaper, or more effective way? If so, the combination may be patentable. Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Ottumwa Co. v. Christy, 215 F. 362, 369, 131 C. C. A. 504; Sodemann Co. v. Kauffman (C. C. A.) 275 F. 593, 596; Proudfit Co. v. Kalamazoo Co., 230 F. 120, 144 C. C. A. 418.

Applying these tests to Furber, we find that he has brought together for the first time (in combination with an internal combustion engine, a water-cooling system therefor, and a radiator constituting part of the cooling system, all in an automobile) a separate thermostatic element, so located as to be controlled by the temperature of the water in the cooling system, and so arranged as to control in turn, by means of adjustable shutters, the flow of air through the radiator, thereby accomplishing the result of maintaining the temperature of the engine within predetermined limits.

The Furber patent may not have been a pioneer, but it certainly was a distinct improvement on all that had gone before. The evidence shows that, for years prior to the Furber patent, there had been a need and a demand for a device to accomplish the result brought about by the Furber invention, and that the need was not filled and the demand was not met until the advent of the Furber device.

But it is contended by the defendants that the Furber patent is a mere paper patent, and that no product in accordance with the Furber patent has been produced by the plaintiff. It is true that no device has been produced in evidence that corresponds in all details with the drawings of Furber, but it is to be borne in mind that Furber did not limit himself to any particular form of thermostat, and also that the drawings are expressly referred to as merely an "illustrative embodiment" of the invention. With this in mind, it becomes clear that the several products offered in evidence by the plaintiff as embodying the Furber invention are strictly responsive to the claims of the patent. The different form of thermostat and the different positioning of it (sometimes outside the wall of the radiator, sometimes in the water flow, but always controlled by the temperature of the water in the cooling system), shown in these products in evidence, do not change the Furber combination, nor are they outside the claims of the patent.

It is true that some of the present devices used and claimed to be Furber prod-

ucts have plates attached thereto, noting other patents besides Furber, especially Nielsen, No. 832,701, April 11, 1916. But the fact that the devices, whatever other elements they may contain, clearly respond to the claims of the Furber patent, and the further fact that the plaintiff, owner of the Furber patent, has been receiving for years substantial sums from licensees to manufacture these devices under the Furber patent, would seem to negative the claim that the Furber patent is merely a paper patent. The evidence offered along these lines was admissible.

It is not necessary to consider the Nielsen patent at this time, for, whatever limitations Furber may impose on Nielsen, it is apparent that Nielsen can impose none on Furber. In my opinion, the Furber combination meets the tests above mentioned. In the case of Krementz v. Cottle Co., 148 U. S. 556, 13 S. Ct. 719, 37 L. Ed. 558, the court said:

"It is not easy to draw the line that separates the ordinary skill of a mechanic, versed in his art, from the exercise of patentable invention, and the difficulty is specially great in the mechanic arts, where the successive steps in improvements are numerous, and where the changes and modifications are introduced by practical mechanics. * * * The argument drawn from the commercial success of a patented article is not always to be relied on. Other causes, such as the enterprise of the vendors, and the resort to lavish expenditures in advertising, may co-operate to promote a large marketable demand. Yet, as was well said by Mr. Justice Brown, in the case of Consolidated Brakeshoe Co. v. Detroit Co., 47 F. 894, 'when the other facts in the case leave the question of invention in doubt, the fact that the device has gone into general use, and has displaced other devices which had previously been employed for analogous uses, is sufficient to turn the scale in favor of the existence of invention.'"

In Fairbanks, Morse & Co. v. Stickney, 123 F. 82, 59 C. C. A. 212, the court said:

"Even if it be conceded that the individual elements composing the combination are to be found in the prior art, yet, to make the selection of these parts from the prior art, and to combine them, as Hobart did, so as to produce a clutch which is at the same time simple, compact, effective, and useful, required, as we think, more than ordinary mechanical skill. The officials of the Patent Office, with the prior art before them, so found, and granted a patent. This ac-

tion on their part creates a presumption of patentable novelty, which presumption can only be overcome by clear proof that they were mistaken, and that the combination lacks patentable novelty."

See, also, National Cash Register Co. v. American Cash Register Co., 53 F. 367, 3 C. C. A. 559; St. Louis Street Flushing Mach. Co. v. American Street Flushing Mach. Co., 156 F. 574, 579, 84 C. C. A. 340; Toledo Computing Scale Co. v. Moneyweight Scale Co. (C. C.) 178 F. 557, 563; Krell Auto Grand Piano Co. v. Story and Clark, 207 F. 946, 125 C. C. A. 394.

[9] It is contended that the Patent Office did not have before it the prior art disclosed by the above-mentioned patents, except Brock and Lanchester. It is true that these two patents are the only citations in the file wrapper; but this is far from proving that the other patents were not considered. The presumption is that the officials of the Patent Office did their duty, and considered the other patents now brought forward as new prior art. There is no evidence dehors these patents to repudiate this presumption, nor is there anything in the patents themselves which in my judgment should overthrow the presumption.

My conclusion, therefore, is that the Furber combination was patentable, and that the patent is not merely a paper one.

### Infringement.

On the trial, two alleged infringing devices, or accused devices, as they are called by counsel, were offered in evidence. One was Exhibit E–1; the other consisted of exhibits numbered 1 and 2 together. At the close of the evidence Exhibit E–1 was eliminated by the court, on the ground that it had not been sufficiently connected with the defendants. Exhibits 1 and 2, constituting the other accused device, remain to be considered.

This accused device is intended to automatically control the temperature of an automobile radiator. Very briefly described, it consists of a set of adjustible shutters, operated through a system of levers by a thermostat, or, as called by counsel, a thermostatic motor. The form of this thermostat is an expansible rod. This thermostat is supplemented by an auxiliary thermostat of the disc form. The auxiliary thermostat is placed against the outside of the rear wall of the radiator, at the lower part. The auxiliary thermostat is controlled by the temperature of the water in the radiator. When the temperature becomes sufficiently hot, the

disc expands and pushes a small contact plate into a position between the ends of two wires to complete a circuit. One of these wires is connected with the ignition switch; the other runs to a resistance coil surrounding the expansible rod of the main thermostat. The action of the device is this: The heat of the water in the radiator causes the auxiliary thermostat to expand, thereby pushing the contact member between the ends of the two wires. The electric current passes through to the resistance coil, which heats the expansible rod of the main thermostat, causing it to expand, and thereby to operate the levers attached to the shutters.

It is apparent at once that every one of the elements of the Furber patent are present, and operating in the same way, and producing the same result. Defendants in their brief say:

"The defendants' accused device meets in terms the language of claims 1 to 3, inclusive, if these claims be construed without regard to the limitations imposed thereon by the drawings and the specifications of the Furber patent; but, when claims 1 to 3, inclusive, be interpreted and construed in the light of the disclosure of the drawings and specifications of the Furber patent, then the defendants' accused device does not embody the structure defined by any one of said claims."

By the "limitations" mentioned, counsel doubtless means (1) the form of the thermostat in Furber, and (2) the positioning of the same; but, as seen above, no limitations are placed by the specifications on the form of thermostat, and the drawings simply illustrate one form. The only limitation on the position of the thermostat is that it be so placed as to be controlled by the temperature of the water in the cooling system. It is true defendants' auxiliary thermostat is placed in a different position from any shown by Furber, but, as testified to by the witness Brush, the exact place in which the thermostat is located is not of vital importance, so long as it is controlled by the temperature of the cooling water; different locations simply make necessary different adjustments of the thermostat.

[10] The fact is that the defendants' auxiliary thermostat is placed in a less favorable position than the thermostat in Furber, and for this reason is less efficient, and for this reason, also, has been supplemented by the additional force of electricity to help operate the so-called main thermostat. But decreased efficiency does not avoid infringement. Penfield v. Chambers, 92 F. 630, 34

C. C. A. 579; King Ax Co. v. Hubbard, 97 F. 795, 38 C. C. A. 423; Murray v. Detroit Co., 206 F. 465, 124 C. C. A. 371.

[11] It is also elementary that the addition of an extra element to a combination does not avoid infringement. The primal controlling power over both the simple thermostatic element of Furber, as well as the more complex thermostatic element of defendants, is the temperature of the water in the cooling system. The influence of the temperature of the air surrounding the devices is merely incidental. In my judgment, claims 1, 2, and 3 of Furber are infringed by defendants' device.

From what has been said, it follows that claim 4 of Furber is also infringed. This claim makes the thermostat an independent element. It is also an independent element in defendants' device. The form is immaterial. The double thermostatic element of defendants, whether it is called a thermomotor or an electric motor, is the exact mechanical equivalent of the simple thermostatic element of Furber, even within the reasonably narrow range of equivalents allowable to the Furber patent.

Claims 5, 6, and 8 call for a thermostat in the cooling system. In the drawings of Furber the thermostat is shown immersed in the water. In defendants' device the auxiliary thermostat is pressed against the wall of the radiator; it is contended that therefore it is not in the cooling system. The same contention might be made if the thermostat was inclosed among the cells of the radiator, being in contact with them, but not with the water in the cells.

In view of the nature of the function to be performed by the thermostat in the combination of Furber, and in view of the sole vital requirement that it be controlled by the temperature of the water in the cooling system, it may be doubtful whether the words "in the cooling system," in claims 5, 6, and 8, necessarily mean immersed in the water of the cooling system. The words may simply mean so positioned with reference to the cooling system as to be under the controlling influence of the temperature of the water therein.

If it is not permissible to give this latter meaning to the words "in the cooling system," then, in my judgment, the defendants' method of bringing their thermostat within the controlling influence of the temperature of the water in the cooling system is the mechanical equivalent of the method of Furber. The presence of the additional sheet of metal, wafer-like in thinness, between the water in the cooling system and the ther-

mostatic element in defendants' device, does not alter either the purpose, the action, or the result.

[12] Summing up: Patent No. 1,114,246 is valid, and is owned by plaintiff. Claims 1 to 4, inclusive, and claims 5, 6, and 8, of said patents, are each valid, and are each infringed by defendants' device.

A decree may be prepared in accordance with this decision, and submitted to counsel for defendants' as to form, before being submitted for signature.