RHINEHART DEVELOPMENT COR-
PORATION, Plaintiff,

v.

GENERAL METALWARE COMPANY,
and Montgomery Ward and Co., Incor-
porated, Defendants-Counterclaimants

Civ. No. 4674.

United States District Court
D. Minnesota, Fourth Division.

Sept. 28, 1955.

Charles V. Hildebrecht and Edward C.
Grelle, Chicago, Ill., Andrew E. Carlsen,
Minneapolis, Minn., for plaintiff.

Paul, Moore & Dugger, Minneapolis,
Minn., by Ralph L. Dugger and Robert
P. White, Minneapolis, Minn., for de-
fendant.

DONOVAN, District Judge.

This patent infringement suit brought by plaintiff as owner of Patent No. 2,-535,159, for injunctive relief and damages came on for trial at Minneapolis, Minnesota, on July 18, 1955.

Defendants, by answer, challenged the validity of the patent and jointly and severally counterclaimed for a declaratory judgment in their favor.

Some of the important phases of the case are undisputed, and will be outlined in this paragraph as follows: Plaintiff is the owner by patentee's assignment of the patent in suit. Said patent, as issued, is for a nipple attachment for feed pails.[1] The accused device is also a nipple attachment for feed pails.[2] Plaintiff has had commercial success in marketing calf feeders in which the patent is featured. Defendants have been engaged during the times involved in the instant case in manufacturing and marketing calf feeders in which the accused device is featured.

The contentions of the parties are simply these: The plaintiff contends the accused device infringes the patent in suit. Defendants contend the patent in suit is invalid for lack of invention, and further, that it was anticipated by the prior art.

The file wrapper[3] discloses rejection of the original application for a patent because of its simulation of:

" * * * the old combination of a pail, a nipple with a valve, and means for attaching the nipple to the pail, which combination is shown to be old by either the Swiss patent to Banninger or the British patent to Armour and Co. * * *. * * * further * * * as being unpatentable over the disclosure in the patent to Banninger in view of the disclosure in the patent to Whitmore."

The Examiner concludes his rejection of said application in these words:

"It would not involve invention to provide the shouldered coupling and gasket shown in the patent to Whitmore in the device disclosed in the patent to Banninger."

As resubmitted, the patentee limited his claims to those set forth in footnote 1, supra. Notice of allowance was issued, and letters patent followed on December 26, 1950.

It is obvious from the claim basis of the patent in suit that it is a combination patent owned by plaintiff, and the accused device is made up of a similar combination of elements. Both, from a fac-

---

1. The patent claims in issue read:

"1. An attachment for securing a nipple to a feed pail, said attachment consisting of a chambered body having an outflow check-valve therein, said body being removably positioned within a feed pail and having a threaded shoulder extending outwardly through an apertured embossment therein, and provided on its inner end with an enlargement having a portal between the bottom of said pail and the outflow opening in said body, and a lock ring engaging said shoulder for securing a nipple on said body and having clamping engagement against said embossment.

"2. An attachment for securing a nipple to a feed pail, said attachment having an outflow check valve member removably secured to the pail from the interior thereof and provided with a threaded shoulder that extends through an apertured embossment in said pail, the inner end of said member having an enlargement providing a portal extending between the bottom of said pail and the outflow opening of said body, and a lock ring threaded on said shoulder adapted to secure a nipple on said body and clamp said body against said embossment."

2. The accused device consists of six elements, i. e.:

"1. Pail with a hole in the sidewall near the bottom;

"2. A rubber 'nipple' with an inturned base flange;

"3. A threaded tubular brass turning called the 'plug' outwardly flanged at one end to interlock with the inturned nipple flange;

"4. A 'ferrule' which surrounds the base of the nipple at its flange end;

"5. A spherical 'ball valve' which is inside the 'plug' and

"6. A closed end, cylindrical, internally threaded 'cap nut' which is within the pail, and is slotted at one side, to act as a nut and as a suction tube."

3. Plaintiff's Exhibit 10.

tual standpoint, have to do with a novelty intended to wean the calf from the mother cow, and, accomplishing that, to furnish the calf nourishing milk unaccompanied by the swallowing of air that would cause distress in the several stomachs of the young bovine.[4] Thus the mother cow is returned to the herd in the pasture for the purpose of producing milk for human consumption, and the calf obtains necessary sustenance without the hazard of a possible kick from its irritated mother. The exhibits in evidence demonstrate how useful the contrivance is to one engaged in dairying and its related industries, and why there is a market for it.

Following is a summary of the elements common to the patent in suit and the accused device: the outflow check valve, composed of a ball like an agate or marble; the nipple; the nipple mounting; the essential pail, and the opening in the pail. All of these are found in the prior art in one form or another. In addition to the elements just detailed may be added the threaded shoulder extending through the apertured embossment in the pail, as described in plaintiff's patent claims, and secured to the pail from within. Defendants' device accomplishes the same thing by use of a threaded tubular brass plug outwardly flanged at one end to interlock with the inturned nipple flange secured to the pail from without by means of a ferrule and capnut. From the foregoing, it must be evident that if validity attaches to the patent, the accused device must necessarily infringe, despite reversal of parts.

The anticipation relied upon by defendants in their answer, proof and briefs has to do with domestic and foreign patents extending over a period of time from 1884 to 1945.[5] They argue that about the only element new or novel added to the art by the patent in suit is the "embossment" mentioned in the claims quoted in footnote 1, supra, and the valve body within the pail extending outwardly, together with the lock ring. The valve body and double-function lock ring which secures the nipple to the pail the defendants urge, were anticipated by Whitmore and Banninger. The pail used in connection with the patent in suit may be disregarded for present purposes. This is made clear by plaintiff's admission that the two claims involved "do not include the pail or the apertured embossment as express limitations." Plaintiff, answering defendants' contention that the patent in suit was anticipated, earnestly argues that defendants in their use of the accused device have not copied the prior art upon which they rely, but "instead * * * have appropriated the invention of the patent in suit with its novel and advantageous * * * combination of elements and its new and improved results." The record substantiates this assertion. But, nevertheless, inventors are chargeable with a knowledge of all pre-existing devices.

---

4. Any father worthy of the name has carried his progeny on his shoulder to relieve the infant from stomach pain attributed to swallowing air while nursing.

5. A partial listing by the defendants of prior patents is as follows:

| Patent No. | Date Issued: | Patent Issued to: | Issued by: |
| --- | --- | --- | --- |
| 303,673 | Aug. 19, 1884 | J. B. Small | U. S. |
| 545,928 | Sept. 10, 1895 | E. W. Whitmore | U. S. |
| 732,630 | June 30, 1903 | I. H. Hall, Jr. | U. S. |
| 840,632 | Jan. 8, 1907 | H. Krumling | U. S. |
| 1,062,657 | May 27, 1913 | J. Moore | U. S. |
| 176,838 | May 15, 1935 | Otto Banninger | Swiss |
| 844,177 | July 20, 1939 | Societe, etc. | French |
| 531,916 | Jan. 14, 1941 | Armour & Co. | British |

See: Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 493, 20 S.Ct. 708, 44 L.Ed. 856.

■ Granting that invention is not necessarily absent from a patent, unless what is produced is logically deducible from the prior art, it must also be borne in mind in considering the prior patents cited by defendants as anticipations that it is not permissible to modify the structures disclosed by such patents and then claim the modified structure as an anticipation.

The issues present, in the order of their importance, these questions:

(1) Is the patent in suit valid? If it is found to be valid, then

(2) Has the patent in suit been infringed by the accused device?

■ At the outset, plaintiff is aided by the presumption of validity.[6] It is also the law that combination claims are presumed old or not patentable.[7] Confronted by such anomolous presumptions, the trial court obviously must exercise caution in determining the presence or absence of invention in the instant case. Mr. Justice Jackson directs attention to the tendency toward raising of the standards of originality, saying, "It is agreed that the key to patentability of a mechanical device that brings old factors into cooperation is presence or lack of invention." [8] The all-important question is: What constitutes invention in a combination patent? A combination of steps is not necessarily unpatentable merely because each alone is old in the art. The converse is also true, even in the presence of improvement, if it is, in view of the prior art, but an obvious expedient to the artisan skilled in that art.[9]

■■ The cooperation of old factors must be measured by new standards of patentability in search of the correct answer to the following: (1) Has the efficiency of an old process been increased? Or, (2), has a new and useful result been attained? Or (3), has an old result been produced in a better, or more effective way? In arriving at a correct solution of the problem, the presumption of validity is more easily adopted than overcome, for it is no easy task to ascertain the line of demarcation between the ordinary skill of a mechanic, well versed in his art on the one hand, and that of patentable invention, on the other. Commercial success is not always reliable, unless the scales are balanced between doubt and the presumption of validity. Such seems to be the situation in the instant case. Have defendants produced clear proof that the patent lacks the required novelty? They have introduced in evidence a number of prior patents, including those set forth in footnote 5, supra. Elements such as the nipple, the ball valve, the valve chamber, the valve seat, the threaded shoulder and gasket are to be found in one or more of said prior patents. At most, it may be said that plaintiff has produced an old result in a better and more effective way than the prior art had been capable of accomplishing.

■ The outstanding achievement is the threaded shoulder with the syphon effect, or "hollowed enlargement extending downwardly to provide an outflow portal", and, as a part of the valvular body, attached from the inside of the pail and secured by the "threaded shoulder." But in rejecting the original application the Examiner said the patent "would not involve invention to provide the shouldered coupling and gasket shown in the patent to Whitmore." The query of Mr. Justice Jackson is appropriate here: "What indicia of invention should the courts seek in a case where nothing tangible is new, and invention,

6. Donner v. Sheer Pharmacal Corporation, 8 Cir., 64 F.2d 217; Wisconsin Alumni Research Foundation v. George A. Breon & Co., 8 Cir., 85 F.2d 166; Hall Laboratories v. Economics Laboratory, D.C.Minn., 72 F.Supp. 683, affirmed 8 Cir., 169 F.2d 65.

7. Detroit Motor Appliance Co. v. Burke, D.C.Minn., 4 F.2d 118, 119, and cases cited.

8. Great Atlantic & Pac. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 150, 71 S.Ct. 127, 129, 95 L.Ed. 162.

9. Application of Stewart, Cust. & Pat. App., 222 F.2d 747, 752.

if it exists at all, is only in bringing old elements together?" The Supreme Court went on to say that no "precise and comprehensive definition of the test to be applied in such cases" has ever been ventured by it. The tests suggested by this court in the instant case, while a means to an end, are circumscribed and limited by the law laid down by the Supreme Court of the United States.[10] "In course of time" said the Court, "the profession came to employ the term 'combination' to imply its presence and the term 'aggregation' to signify its absence * * *." That is, the presence or absence of invention. The employment of tests, then, leads but to "confusion * * * when applied to combination of old elements. * * * 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' " [11]

As recently stated by Judge John B. Sanborn, "Implications favorable to the plaintiff * * * must be considered in the light of the more recent decisions of the Supreme Court raising the standards of originality necessary to sustain a patent." [12]

Despite the thoroughness of plaintiff's able counsel in presentation of evidence, and the learned briefs submitted in support of their cause, I am persuaded that the patent in suit does not display the minimal and required substantial novelty to establish presence of invention. In this posture of the instant case, the charge of infringement need not be considered.

It is my opinion that the evidence viewed from the standpoint most favorable to the plaintiff does not sustain the claim that the patent in suit measures up to the standard of patentable invention.

Defendant may submit findings of fact, conclusions of law and form of judgment consistent with the foregoing.

Plaintiff is allowed an exception.

---

10. Great Atlantic & Pac. Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. 147, 150, 151, 71 S.Ct. 127, 129.

11. Id., 340 U.S. at page 151, 71 S.Ct. at page 129, quoting:
    Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008.

See also Alemite Co. v. Jiffy Lubricator Co., 8 Cir., 176 F.2d 444, 448, 449.

12. Alemite Co. v. Jiffy Lubricator Co., supra.
    See also General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912, 917, 918.