## EVANS v. RICHARD.

Court of Customs and Patent Appeals. Dec. 19, 1929.

Patent Appeal No. 2189.

J. D. Cox and L. B. Mann, both of Chicago, Ill. (Watts T. Estabrook, of Washington, D. C., of counsel), for appellant.

Stuart C. Barnes, of Detroit, Mich., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge. An interference proceeding was instituted by the Patent Office between the pending applications of the appellant, serial No. 536,989 and the appellee, Otis K. Richard, serial No. 511,211. The subject-matter of said interference, as set forth in the official declaration, consists of one count, and is as follows:

"Count. In . an anchoring device for wheeled vehicles wherein a return bent member has a wheel spoke engaging section at the bent portion thereof and side legs having anchoring feet at the free ends thereof, said member being formed of a single strip of sheet metal, the spoke engaging portion being angularly bent relatively to the legs to extend perpendicularly for intimately contacting the spoke, and said feet being return bent and angularly disposed relatively to said legs."

A hearing was had on said interference, both parties taking testimony. There was also incorporated in the record, by stipulation, the testimony taken in a former interference No. 49,081 between the appellant and Otis K. Richard and Clement C. Richard, on pending applications in serial No. 511,599 and serial No. 516,534, respectively. The party, Otis K. Richard, in said interference No. 49,081, was the same person as the appellee in the pending interference.

The issue in the present case is one of priority. The appellant, Evans, filed his application for a patent on February 16, 1922. The appellee, Richard, made his filing on October 28, 1921. After the institution of the interference proceeding, the junior party, Evans, entered his motion to dissolve the interference, claiming that the senior party, Richard, was estopped to make a claim including the return bent feature of the foot of said device, because, in the application filed November 21, 1921, serial No. 516,534, which was involved in the said interference No. 49,081, and in which the said Otis K. Richard, the senior party, and his brother, were joint claimants, and which said interference was decided favorably to the appellant. Evans, said senior party, had an opportunity to present the claim which is the basis of this interference as to that feature, and did not do so; that therefore he ought to be now estopped from making such a claim. This motion was denied by the Commissioner, and it will not be necessary for us to further refer to it, in view of the conclusion we have reached in this case on the main issue of priority.

The Examiner of Interferences awarded priority to Evans, which decision, on appeal to the Examiners in Chief, was affirmed. On further appeal to the Commissioner, the decisions of the Examiner of Interferences and the Examiners in Chief were reversed and priority was awarded by the Commissioner to the senior party, Richard.

In view of the various opinions which have been expressed by the three tribunals in the Patent Office, it becomes necessary for us to determine the weight of the evidence on the question of priority. The senior party, Richard, testified that he was a die maker and manufacturer, and that in April, 1921, Healy and Ackerman presented him with a steel automobile loading block and requested him to work out a block; that at that time he was in business with his brother as the Richard Bros. Die Works; that

the inquiry thus made suggested to him and his brother the possibility of a sheet metal hold-down to make the complete loading unit a pressed steel article. In other words, he decided to prepare something which would be of metal, and which would keep the automobiles, when loaded, from jumping up or sideways. This date, he states, was about three or four days prior to April 15, 1921. He fixes this date from the fact that he had tickets for the opening ball game at Detroit, which game, he states, was to occur on the 14th of April, but was postponed on account of rain until the next day; that he sketched his hold-down and gave his sketch to his brother and some of his associates, and they made it up while he was at the game; that this model was put in a room in his establishment and remained there until about a week or ten days before the date of his testimony on August 11, 1925, when he gave it an Oakite bath and afterwards brought it into the hearing. In appellee's preliminary statement he states "that no drawing and no written description of the invention was made except the drawing and the specification of the application for patent," and it is contended here, by appellant, that the proof of the making of this sketch in appellee's shop should not be allowed at this time, inasmuch as he is bound by his said preliminary statement. The appellee contends, in answer to this proposition, that he should be permitted to offer such testimony because the rough sketch was not such a one as is commonly considered as a drawing. The appellee stated further that, when he returned from the ball game his brother told him he had a better idea for a hold-down, and that thereupon he abandoned his first idea and adopted the one suggested by his brother; that only one model was made from his first drawing, and it was never tested in use; that Mr. Healy or Mr. Ackerman, or perhaps both of them, went to the ball game with him; that Mr. Healy was in his shop nearly every day for two or three months, beginning in the fore part of April, 1921.

Samuel Vazana, employed as a foreman by said Richard Bros. for seven years prior to his testimony, testified that he had seen the model made from the original sketch of the appellee, and that he "laid out the blanks and filed it from a sketch"; that afterwards he put the sketch in the bottom of his tool box and dated it on that day, August 15, 1921; that he received the sketch from the brother of appellee and made up the model from it; that this sketch re-

mained in his tool box until the Monday or Tuesday last before the hearing, under his tools. The brother of appellee, C. C. Richard, identified the aforesaid model and stated that he had seen it on the 15th of April 1921, and had made it while his brother was attending the opening baseball game on that day; that he had given Vazana his instructions and told him how to make it. He states that the model was put away and no others were made; that he conceived the idea of several changes which he wished to make on the hold-down, and explained these to his brother, and that thereupon they decided that, "while it was a very good practical hold-down, it was more expensive to manufacture than it would be if we incorporated both our ideas in a different hold-down."

In contradiction of this testimony, Robert K. Healy, employed at the time of his testimony by the appellant, Evans, stated that he did not attend the opening ball game in Detroit for the baseball season of 1921, and relates circumstances which seems to indicate clearly that he is correct about his said statement; that he did go to a ball game with the appellee during the late summer or early fall of 1921, and also gives circumstances which seem to indicate the truth of this statement; that he never went to a ball game with the appellee except once; and that the said opening ball game was played on April 14, 1921. He states further that he first took up the question of dies for loading blocks with the Richard Bros. some time after June 1, 1921.

This evidence is relied upon by appellee to establish conception on April 15, 1921, and disclosure on the succeeding day. No question is raised as to the interference count reading on both the interfering claims herein. If it be conceded that the sketch made by appellee, as he testifies, together with the testimony of his brother and of Vazana, is sufficient corroboration of the conception by appellee on April 15th, it is quite apparent that the appellee abandoned this invention and did nothing more with it until the time of his filing and constructive reduction to practice on October 28, 1921.

The appellant, Evans, in his preliminary statement, claims conception and disclosure as of April, 1921. He testifies that he is a manufacturer of automobile loading devices, and on April 21, 1921, made a sketch of an automobile tie-down which was introduced in evidence, and which shows the device practically as involved in appellant's claim in this interference; that he was experi-

menting with hold-downs made from flat metal during the month of April, and that later, during the months of May and June, some slight changes were made in the feet of these devices, and the use of rubber was also investigated; that early in the summer of 1921 he made up samples and exhibited them to several automobile manufacturers, explaining their use; that samples were sent to the Sheridan Motor Company, of Muncie, and his representative, Mr. Tucker, went to Muncie during the summer of 1921 and made a number of tests; that other hold-downs were sent to the Cadillac Company, and test loads sent out by that company from time to time; that all these hold-downs were made by hand by Emil Westover; that in the early fall of 1921 the Blakely Company threatened him with suit for infringement, and that this caused him to attempt to develop a figure 4 shaped foot to avoid such suit; that the Cadillac Company had ordered 10,000 hold-downs from him, but when he attempted to get them to change to the figure 4 foot device they canceled his order; that hold-downs were furnished to the Cadillac Company in the latter half of June, 1921, and were used; that from the time of the first drawing he constantly experimented on these devices, and in the early part of 1922 felt prepared to apply for a patent; that during this interval he perfected a resilient form of leg for the hold-down; that models were made by him in April, and these were introduced in evidence.

William R. Henderson, foreman of the loading dock of the Cadillac Motor Car Company during the year 1921, testified that he was acquainted with Max Tucker, salesman for the appellant; that he drew a sketch of a hold-down which was experimented with during the summer of 1921; that Tucker had brought sample hold-downs to his place, and that this occasioned the making of the sketch; that the hold-down which Tucker first exhibited to him was substantially the article upon which appellant now desires the patent; that he brought the first number of these hold-downs to Tucker's place "along in July, the first part of August"; that he used these hold-downs on 18 or 20 machines and they proved satisfactory; that these were shipped during the summer of 1921, and during a period that he identifies by the fact that his child had whooping cough during that period; that this was in the latter part of August or the first part of September, which dates he fixes by the fact that a servant girl employed in his household left shortly after that time; that the devices used by him were substantially those of the interference here, but that there were no corrugations between the collar and the feet; that his company made an order for 10,000 of these straps, which was canceled because the appellant decided to substitute a figure 4 foot instead of the model they had been using.

Emil F. Westover, a manufacturer, testifies that he made the Evans hold-downs some time in July, 1921; that he was not a member of appellant's firm either at that time or at the time of testifying, and that he made these hold-downs on evenings and Saturday afternoons, and states that his Saturday afternoon holidays lasted from the first Saturday in May until the first Saturday after Labor Day; that, when he made up these hold-downs, he gave them to Mr. Tucker, who took them away with him; that he made about 200 of them, and since that has made many thousands of the latter type; that when Mr. Tucker first asked him to make it he had a complete sample with him; that he remembers Mr. Tucker taking an armful of these down to the Cadillac Motor Car Company around July or the first part of August.

Max D. Tucker, manager of the appellant's company, testifies that the appellant gave him a sketch which was introduced in evidence, and which he signed on April 22, 1921, showing the device as claimed by appellant herein; that Mr. Westover made complete hold-downs, according to this sketch, during the early summer of 1921; and that these were furnished to the Sheridan Motor Car Company and the Cadillac Motor Car Company the early part of the summer, 1921; these dates he fixes by referring to the time when he purchased an automobile, about July 4th, and the return of a transfer certificate thereon on August 27, 1921; that the Cadillac Company used 20 or 25 sets of these; that he remembers distinctly taking several sets out to the Cadillac Company the Friday before Labor Day; that the load tests were satisfactory; that another type was delivered to Mr. Henderson the early part of September, 1921, being those having corrugations in the legs; that the last set of hold-downs were furnished to the Cadillac Company around October 1, 1921, and the revised samples in the early part of July, 1921.

From a consideration of this testimony, we are convinced that the appellant, Evans, reduced his invention to practice during the months of July and August, 1921; that

his conception of the same was on April 21st of the same year, and that, from the time he first conceived the invention until the time of reduction to practice, and later to the time of his application for patent, he was diligent and is guilty of no laches. The witnesses who testify in his behalf verify their statements by occurrences which, though seemingly trivial in themselves, are such things as the legal profession have found by experience are indications of the truthfulness of their respective stories. There is nothing in the testimony of any of these witnesses to indicate that they were testifying falsely.

It is said in the decision of the Commissioner that there is no proof of the date when the contract was made with the Cadillac Motor Car Company for 10,000 holddowns; that this, being a presumably written contract, was the best evidence about when these transactions occurred; and that the appellant, not having attempted to produce the same, must be in the position of admitting that, if it were produced, it would have been unfavorable to his contentions. On the other hand, it might equally be said that this contract was available to the appellee and was not produced by him. In any event, the loading foreman of the Cadillac Motor Car Company was called to testify. He was the one person in that company who knew the facts most intimately. His testimony substantiated that of the appellant. It was said by the Court of Appeals of the District of Columbia in Macaulay v. Malt-Diastase Co., 55 App. D. C. 277, 4 F.(2d) 944: "Proof may be established either by oral testimony or by documentary evidence. One is as competent as the other, and if the oral testimony is sufficient to establish proof, documentary evidence is unnecessary, whether such evidence be in the possession of the party or not." We agree with the Court of Appeals in this construction of the law.

There is no proof in the record of any reduction to practice by the appellee prior to the date of his filing his application in October, 1921. A prior invention, abandoned, is merely an experiment, and does not affect the rights of another inventor who takes up the subject and perfects the invention for actual use. American Metal Cap Co. v. Anchor Cap & Closure Corp. (D. C.) 278 F. 670. It follows, therefore, that appellant, even though his conception may have been of a later date than that of appellee, having been diligent, and having been the first to reduce to practice, is entitled to priority. Christie v. Seybold (C. C. A.) 55 F. 69; Paul v. Johnson, 23 App. D. C. 187.

The decision of the Patent Office is reversed, and priority is awarded to the appellant, Evans.

Reversed.